Filed 8/6/19

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TYRECE DEVELLE JEFFERSON,<br><br>    Defendant and Appellant. | F074519<br><br>(Super. Ct. No. F15907389)<br><br><br>**OPINION** |

        APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

        Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

        Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and A. Kay Lauterbach, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

        *Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I through IV and VI.

# INTRODUCTION

Among other appellate contentions, defendant Tyrece Develle Jefferson argues he is entitled to a remand of his case to permit the trial court to exercise its discretion regarding whether to permit him to seek mental health diversion under newly enacted section 1001.36 of the Penal Code. (Undesignated statutory references are to the Pen. Code.) Because the trial court clearly found, in another context, that defendant's alleged mental health disorder was not a significant factor in his commission of the charged offenses, we conclude a remand for further consideration on this question would be futile. We therefore reject defendant's contention.

Defendant was charged with and convicted of attempted second degree robbery (§§ 664, 211; count 1), assault with a semiautomatic firearm (§ 245, subd. (b); count 2), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 3), and multiple enhancements after he attempted to rob a store at gunpoint. He challenges his conviction for assault with a semiautomatic firearm, arguing the trial court's failure to sua sponte instruct the jury regarding unanimity resulted in a violation of his right to due process.

He also asserts numerous challenges to his sentence. First, he contends remand is required because the trial court mistakenly believed it was required to sentence him consecutively on counts 1 and 2, though it had discretion to run the counts concurrently. To the extent that contention was waived for failure to object, defendant argues he received ineffective assistance of counsel. He next challenges the victim restitution order. He further contends all of his convictions should be conditionally reversed so the trial court can consider granting him mental health diversion pursuant to section 1001.36. Finally, he seeks a new sentencing hearing to permit the trial court to exercise its discretion and decide whether to strike the firearm enhancements in light of Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620) and his two prior serious felony enhancements in light of Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393).

2.

We remand this matter for resentencing to permit the trial court to exercise its discretion regarding whether to run the sentences on counts 1 and 2 consecutively or concurrently and to consider whether to dismiss defendant's firearm and/or prior serious felony enhancements in light of Senate Bills 620 and 1393. In all other respects, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 26, 2015, Ms. Ward was working as a cashier at a store in Fresno. Around noon, defendant, who had a mask over his face, entered the store holding a silver gun and approached Ward's register. He pointed the gun at Ward and told her to "'[g]ive [him] the money.'" Ward was scared and called the manager to open the register drawer but then realized she could open it herself. She opened the register and "backed up." Defendant "threw [a] bag" and told her to "'[p]ut the money in the bag.'"

Ward was about to put money in the bag when the customer who was paying, Mr. Rodriguez, turned and handed his five-month-old baby to his wife. Defendant told Rodriguez, "'No, you're fine'" or "'you're cool'" and then turned the gun back on Ward. Rodriguez approached defendant, punched him, and tried to grab the gun. They began fighting inside the store and then moved outside. Defendant's pistol "lightly hit" Rodriguez in the face. Rodriguez explained, as they struggled, he was trying to get away from the gun because it was right next to his ribs. Eventually, a shot was fired. After the gunshot, Ward's coworker, Mr. Botello, saw defendant pointing the gun toward the store, trying to pull back the slide or cock it. Rodriguez grabbed the gun and kicked it away. Rodriguez and Botello managed to subdue defendant on the ground until police arrived and apprehended him. Another person delivered the gun to police when they arrived. The gun's magazine was "one round short of being full." It was a "working firearm." The police found a "bullet impact in the carpet" inside of the store.

Neither Ward nor Botello saw defendant's face. Rodriguez saw defendant's face once Rodriguez subdued him after the fight and the mask slipped partway, revealing facial tattoos; Rodriguez identified him as the perpetrator at trial.

The People introduced video surveillance footage from the store. Another employee who was present that day and witnessed the events, Ms. Coffman, narrated what was occurring in the video. The video depicted a masked man entering the store at 12:16 p.m. He waved a gun around and interacted with the cashier. At 12:17 p.m. a man in a white shirt could be seen approaching the gunman and the two engaged in a struggle. Within seconds, the struggle continued outside of the store and Coffman explained the gun went off. Coffman testified: "They hit the white van. They are struggling, struggling, fighting, and [the gunman's] hand went up, the gun went off. Then when the gun went off, it fell to the ground." She did not see the gun pointing toward anyone when it went off.

The People also introduced a recording of the police interview conducted with defendant on November 26, 2015. In the interview, defendant admitted he went into the store "to do a robbery," and he "told the clerk, open the register." He stated he "wasn't trying to hurt nobody"; he was going through a "tough time" and "needed some money."

The jury convicted defendant of attempted second degree robbery (§§ 664, 211; count 1), assault with a semiautomatic firearm (§ 245, subd. (d); count 2), and possession of a firearm by a felon (§ 29800, subd. (a)(1); count 3). Following the guilt phase, the court conducted a proceeding for the jury to consider defendant's plea of not guilty by reason of insanity.

During that hearing, defendant testified he became suicidal and homicidal when he was approximately 15 years old and his mother passed away. He tried to commit suicide while in juvenile hall by using sheets to hang himself from a bunk but the staff intervened and cut him down. According to defendant, he was treated for depression and anxiety at the California Youth Authority when he was 17 and had "panic attacks, bipolar,

4.

schizophrenic and emotional states. And other things, such as like … anger problems and stuff." He testified he was prescribed medication, including Vistaril and lithium. He was released from the California Youth Authority in 2004 but went back to prison as an adult from 2005 to 2015. Defendant testified, while in prison he was diagnosed with "bipolar, schizophrenic [*sic*], anxiety, depression, a few other things, such as dealing with anger and having nightmares and stuff, panic attacks." By panic attacks, defendant explained: "I become unconscious or I black out, I get real anxiety [*sic*] and I don't properly think, I just react." Defendant testified, while in prison in 2013, he attempted suicide again by cutting his wrist. He also hung himself in his room in 2014 when his grandmother died. He was then sent to a hospital for inmates dealing with mental illness. He was given the same medications but stronger doses. According to defendant, he was released from "R.G." Donovan in San Diego, "a mental health institution," in February 2015.

Defendant testified, on the date of the store incident, he had "issues" causing him stress and he "had a panic attack and … became unconscious and blacked out" when he was near the store. He recalled having a gun and that he "hit the … store," meaning he "tried to get some money from the clerk" using the gun when he was attacked. According to defendant he "wasn't really thinking right," he "just became unconscious of what [he] was doing," and "ran in the store and tried to get some money." When he was attacked, he engaged in a fistfight because he "feared for [his] life" and "became suicidal and homicidal at that time." Defendant testified that at the time of trial he was still receiving treatment and medication for the mental health issues he mentioned. Defendant did not have with him any medical records from the institutions he claimed diagnosed him.

Forensic psychiatrist Dr. Howard Terrell testified on behalf of the prosecution that he was asked to prepare a forensic psychiatric evaluation of defendant. He explained he met with defendant, reviewed records he received, and then wrote a report based on all the information available to him and on the legal criteria for insanity in California.

5.

Dr. Terrell did not see evidence of bipolar disorder or psychosis, and defendant "did not appear to be mentally ill at the time [Dr. Terrell] met with him." He recommended defendant be found legally sane at the time of the crime because "it appeared that he definitely knew that he was robbing somebody at gunpoint and that he knew that it was wrong. And there was no evidence that [Dr. Terrell] could find of a mental disorder that rendered [defendant] either unable to understand the nature of his criminal actions or to understand the wrongfulness of those actions." Dr. Terrell received information from defendant that he had been diagnosed with bipolar disorder in the past. He testified it was possible defendant had bipolar disorder based on defendant's claim he had been previously diagnosed, but Dr. Terrell was not convinced that he did. Dr. Terrell noted he believed defendant has "had times of depression and anxiety and probably panic." The jury found defendant to have been legally sane at the time he committed the charged crimes.

The court sentenced defendant on count 2, assault with a firearm, a felony violation of section 245, subdivision (b), to the aggravated term of nine years to life, tripled under section 667, subdivision (e)(2)(A)(i), for a total indeterminate term of 27 years to life, enhanced by an additional 10 years for the jury's finding of personal use of a firearm under section 12022.5, subdivision (a), and an additional five years based on the jury's finding defendant suffered a prior serious felony conviction under section 667, subdivision (a)(1). The court noted there were two section 667, subdivision (a) findings, but "the two convictions arose from the same case," so the court imposed "a single 5-year term." The court struck a three-year enhancement for the prison prior under section 667.5, subdivision (a) because it stemmed from the same conviction as the prior serious felony. The court sentenced defendant on count 1, attempted second degree robbery, to 25 years to life, enhanced by 10 years for the jury's finding of personal use of a firearm under section 12022.53, subdivision (b), and an additional five years for defendant's prior serious felony conviction under section 667, subdivision (a)(1), for a total determinate

6.

term of 15 years and an indeterminate term of 25 years to life. The court ordered the sentences for counts 1 and 2 to run consecutively under section 667, subdivision (c)(7). Finally, defendant was sentenced to the aggravated term of six years for count 3, possession of a firearm, that was "doubled under Proposition 36." This term was stayed pursuant to section 654. The court ordered defendant "to make restitution to Mr. Rodriguez, Ms. Ward, and to [the store] for any economic loss they may have suffered as a result of [defendant's] conduct pursuant to … section 1202.4(f)." The court noted it was unaware whether "property [was] taken from [the store]" or "whether there was any damage done to the door which was shown in the video." It also did not know "whether there has been any medical attention sought by Mr. Rodriguez for any injury he may have incurred as a result of [defendant]'s conduct."

## DISCUSSION

### I. Unanimity Instruction Regarding Assault With a Firearm Charge[*]

Defendant argues the trial court prejudicially erred in failing to instruct the jury that unanimity was required when determining whether defendant was guilty of assault with a firearm (§ 245, subd. (b)).

#### A. Relevant Factual Background

During his closing argument, the prosecutor discussed the facts in support of the assault with a firearm charge:

> "Assault with a semiautomatic firearm is pretty straightforward. It is basically … would directly and probably result in the application of force to a person …. This is a loaded firearm, Ladies and Gentlemen, a loaded semiautomatic firearm. And the force used was likely to produce great bodily injury. The defendant did the act willfully. When he acted he had the present ability to apply force with a semiautomatic firearm.… [R]emember the split shot of the screens? That is actually—it is not charged but that is also assault with a semiautomatic firearm on [Ms.] Ward.

---

[*]See footnote, *ante*, page 1.

"Once you are holding the weapon out—in fact, this is actually jumping a little bit ahead, so I'll slow down. The semiautomatic firearm is taking something that basically you can kill somebody with, and if you have the present ability and you act willfully—pointing a gun at somebody is an assault, just a general assault. In this case it was done with a semiautomatic firearm. There are also gun enhancements to both Count One and Count Two, which is what this slide here is. So I want to separate those two legally.

"The assault is separate and it just has those four elements. In addition to that, the People need to prove one of those. In addition to committing the crime with the gun, the defendant either displayed it in a menacing manner, hit someone with the firearm or fired the firearm. And I would suggest in this case—and there might be some evidence that the defendant fired the firearm. Whether or not that was done intentionally or unintentionally, I think you could argue both sides to that. So I'm going to focus on one there, displaying the firearm in a menacing manner. And I think this is where—here are the two photos. There are two pictures of him doing exactly that.

"So I would suggest to you, Ladies and Gentlemen, that the firearm enhancement is proved by the corroborating evidence of the surveillance video, if you didn't even have the witness testimony in this case. Then when you couple that with the testimony about—for Mr. Rodriguez, when he was talking about the gun being pointed directly at his rib cage—you remember that? You know, I think there's some question as to where the gun exactly was fired when it went off. That mark on the carpet, you know, I don't know. It may have been caused by a bullet. I don't know. You'd think they would have found a bullet inside the store or some damage after it had continued on. You know, Mr. Rodriguez sure seemed to think that it—and I'm not submitting to you that he was being anything other than truthful. I think the evidence sort of suggests that he might have been wrong as to where the bullet was going.

"Ms. Coffman, I would submit to you, had probably the best view of the outside—certainly not outside of the realm of danger, but at least not, you know, in the heat of the moment wrestling for this gun. She had a chance to observe him. Plus she was pretty specific. You know, she described, I would suggest, credibly how that gun went off. So that is why I'm not focusing on that last one.

"But, Ladies and Gentlemen, right there, you can look at each of those two screen shots and it is game over right there, in terms of pointing it at—using it—let me get the language specifically. Displaying it in a

8.

menacing manner. That element is satisfied right there and it only needs to be one of those three."

Following defense counsel's closing argument he noted his desire for a unanimity instruction with regard to assault:

> "[DEFENSE COUNSEL]: … I probably should have asked—well, I don't think I did. Just the feeling that I should have asked for an [*sic*] unanimity instruction. But I think—I guess we have proceeded too far at this point. So beyond that, nothing for the record.

> "THE COURT: Well, I'm assuming you are talking about the unanimity instruction as to any alleged assault?

> "[DEFENSE COUNSEL]: Yes.

> "THE COURT: I note that the Information is very clear as to who is the alleged victim of assault in Count Two. The verdict forms were not. So I added the name of [Mr.] Rodriguez as the alleged victim of the assault, and also included in Count One the name of Ms. Ward and [the store] as the alleged victim of Count One. I think that will make it very clear. I don't think an [*sic*] unanimity instruction is necessary. [¶] Anything further?

> "[DEFENSE COUNSEL]: No."

In rebuttal the prosecutor argued:

"As soon as Mr.—puts his hand up, says, you're cool, regardless, as soon as he is pointing that gun at that distance—I don't want you to stop there. Recall the testimony of [Mr.] Botello about how [defendant] is trying to rack the gun while he is out there. I would submit to you—I'll choose my words very carefully—the fact that there was a shell casing in there made it incapable that gun could be fired again. The conduct that [defendant] was engaged in … does not demonstrate someone who is not trying to assault somebody with a firearm. It happened multiple times. And the People's theory in this case is it is basically one continuous action. But the photograph I put up there initially, as soon as—his hand up or not, that is an assault with a firearm."

## B.    Standard of Review and Applicable Law

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.)

9.

In a criminal case, a jury verdict must be unanimous. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) The jury must agree unanimously the defendant is guilty of a *specific* crime. (*Ibid*.) When the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. (*Ibid*.) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' [Citation.]" (*Ibid*.)

"But unanimity as to exactly how the crime was committed is not required." (*People v. Russo*, *supra*, 25 Cal.4th at p. 1135.) "Thus, the unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts form the basis of a guilty verdict on one discrete criminal event.' [Citation.]" (*Ibid*.) "In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime." (*Ibid*.) "In the first situation, but not the second, it should give the unanimity instruction." (*Ibid*.)

We apply a de novo standard of review when considering whether the trial court erred in not giving a unanimity instruction. (See *People v. Hernandez* (2013) 217 Cal.App.4th 559, 568.)

### C.    Analysis

Defendant contends the prosecution argued and presented evidence defendant assaulted Rodriguez with the gun by committing "three distinct and separate acts." He asserts, during the prosecutor's closing argument, he "argued that the assault occurred when [defendant] pointed the gun at Rodriguez in the store in a menacing manner at the beginning of the incident and stated, '[Y]ou're cool' [citation]; or that the assault

occurred during the struggle when the two men [wrestled] for the gun and the gun went off [citation]; or that [defendant] hit Rodriguez with the gun in the face at some point during the struggle [citation]." (Fn. omitted.) He asserts, because the jury was not instructed that it must unanimously agree on a single act or acts before it could convict defendant of the charged crime, the jury could have convicted him of count 2 based on different acts in violation of his state and federal rights to due process and a unanimous verdict. The People respond a unanimity instruction was not required because "[t]he conduct at issue in count two, [defendant's] assault with a firearm upon Rodriguez, was a continuous course of conduct." They argue defendant's only defense and "the only disputed issue in this case was [his] intent." We agree with the People; the acts alleged formed one continuing transaction, so no unanimity instruction was required.

A unanimity instruction is *not* required when the acts alleged are so closely connected as to form part of one continuing transaction or course of conduct. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100; *People v. Dieguez* (2001) 89 Cal.App.4th 266, 275.) This "continuous conduct" exception applies when (1) the defendant's acts are so closely connected that they form part of one and the same transaction and thus one offense, or (2) the statute the defendant is charged with violating contemplates a continuous course of conduct of a series of acts over time. (*People v. Jenkins* (1994) 29 Cal.App.4th 287, 298–299; *People v. Avina* (1993) 14 Cal.App.4th 1303, 1309.) In other words, the exception applies ""'where the acts testified to are so closely related in time and place that the jurors reasonably must either accept or reject the victim's testimony in toto." [Citation.]' [Citation.]" (*People v. Jenkins*, *supra*, at p. 299.) The "continuous conduct" rule applies when a defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for jurors to distinguish between them. (*People v. Stankewitz*, *supra*, at p. 100.)

Here, defendant was charged with one count of assault with a deadly weapon against Rodriguez. In support of this count, the prosecutor cited evidence of defendant's

11.

conduct at the store that took place within the short period of time between defendant attempting to rob the store and being subdued by Rodriguez. The evidence at trial established the events took place over a course of minutes during which defendant waved the gun towards Rodriguez; they engaged in a struggle while Rodriguez tried to subdue him; Rodriguez was hit in the face with the gun; and the gun fired. The prosecutor expressly argued this was a continuous course of conduct, and defendant did not assert separate defenses to each act. Rather, he argued generally that he did not have the requisite intent to commit assault with a deadly weapon. The trial court clarified in its instructions that count 2 dealt with defendant's conduct towards Rodriguez, so the jury could not have concluded conduct related to another victim supported this conviction.

On this record, we conclude defendant's conduct was so closely connected in time and place it fell within the continuous course of conduct exception to the unanimity requirement. Accordingly, the trial court did not err in failing to instruct the jury regarding unanimity on count 2. (See *People v. Flores* (2007) 157 Cal.App.4th 216, 223 [unanimity instruction not required in prosecution for assault with semiautomatic firearm—defendant fired multiple rounds without significant delay between discharges using same firearm while standing in same location—because shots formed one continuous transaction]; see also *People v. Dieguez*, *supra*, 89 Cal.App.4th at p. 275 [continuous course of conduct exception applied where defendant charged with making false statement to obtain workers' compensation benefits, and prosecutor argued any of series of statements and representations made during one doctor's appointment could support guilty verdict, noting statements were "successive, compounding, and interrelated," "aimed at [a] single objective," and barred from multiple punishment by § 654]; *People v. Percelle* (2005) 126 Cal.App.4th 164, 182 [no unanimity instruction required in prosecution for use of fraudulent credit cards where defendant attempted to make two purchases within one hour of each other and he asserted same defense to both acts]; *People v. Jenkins*, *supra*, 29 Cal.App.4th at p. 300 [continuous course of conduct

12.

exception applied where defendant charged with two counts of torture and evidence established incidents on two dates involving beatings consisting of "assaults with fists, boots, a pipe, a hammer, a choking, and a gun shot near the victim's head … closely related in time and place"].)

We reject defendant's first contention.

## II. Remand for Resentencing Required to Permit Court to Decide Whether to Sentence Defendant Consecutively or Concurrently on Counts 1 and 2[*]

Defendant next contends remand is required because the trial court erroneously believed it was required to run his sentences on counts 1 and 2 consecutively under the three strikes law. We agree and remand for resentencing on that basis.

### A. Factual Background

During the sentencing hearing—and in support of defendant's motion made under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) seeking to strike one of defendant's strikes—defense counsel stated defendant was "subject to consecutive sentencing due to the amendment to that statutory scheme made by Proposition 36." He argued:

> "In the absence of … section 1170.12, and I forget the subsection, there would certainly be a strong argument for concurrent sentencing. It is essentially the same criminal transaction. It is essentially the same act. The act itself is not defensible at all, especially given that the jury found that [defendant] was sane at the time. Nevertheless, it is one transaction. [Defendant] points a gun or threatens to shoot or whatever it was and in the process of attempting to rob the store. It is essentially one act and one criminal transaction. There would be a strong argument for concurrent sentencing in the absence of the amendment to the statutory—to the Three Strikes statutory scheme. I would think—I think consecutive sentencing, although it is mandated by law, is harsh, given that it was essentially one criminal transaction. I would urge that is another reason for the Court to strike the strike, or one of his prior strikes."

---

[*]See footnote, *ante*, page 1.

The probation report states: "Pursuant to PC 667(c)(7), the terms in Counts One and Two are mandated to be imposed consecutively." The court ordered the sentences for counts 1 and 2 "to run consecutively under … section 667(c)(7)."

**B.    Standard of Review and Applicable Law**

Section 667, subdivision (c) provides that "[n]otwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior or serious felony convictions as defined in subdivision (d), the court shall adhere to each of the following," including section 667, subdivision (c)(6) and (7). Section 667, subdivision (c)(6) provides: "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)." Section 667, subdivision (c)(7) states: "If there is a current conviction for more than one serious or violent felony as described in paragraph (6), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law."

The California Supreme Court discussed the language of these two subdivisions in *People v. Hendrix* (1997) 16 Cal.4th 508. The *Hendrix* court explained, based on section 667, subdivision (c)(7)'s reference to paragraph (6), the trial court retains discretion to sentence the defendant consecutively if the multiple current serious or violent felony convictions are "'committed on the same occasion'" or "'aris[e] from the same set of operative facts.'" (*People v. Hendrix*, *supra*, at pp. 512–513.) However, if the current serious or violent felony convictions were not committed on the same occasion, and do not arise from the same set of operative facts, under subdivision (c)(7), "not only must the court impose the sentences for these serious or violent offenses consecutive to each other [pursuant to subdivision (c)(6)], it must also impose these sentences 'consecutive to the sentence for any other conviction for which the defendant may be consecutively

14.

sentenced in the manner prescribed by law.'" (*People v. Hendrix*, *supra*, at p. 513.) "The phrase 'committed on the same occasion' is commonly understood to refer to at least a close temporal and spatial proximity between two events, although it may involve other factors as well." (*People v. Deloza* (1998) 18 Cal.4th 585, 594.)

## C. Analysis

Citing *People v. Deloza*, *supra*, 18 Cal.4th 585, defendant argues consecutive sentences are not mandatory under section 667, subdivision (c)(6) where multiple crimes are committed on the same occasion or arise from the same set of operative facts. He contends because counts 1 and 2 were committed on the same occasion and arose from the same set of operative facts, he is entitled to a new sentencing hearing because the trial court misunderstood the scope of its discretion to sentence him concurrently. To the extent this issue was forfeited for failure to object, defendant argues he received ineffective assistance of counsel. The People respond defendant forfeited his challenge because "it involves a discretionary sentencing choice and it was not objected to in the trial court." They further contend defendant's claim fails on the merits because the trial court could have concluded the assault occurred on a different occasion and arose out of a different set of operative facts from the attempted robbery and "there is no evidence that the trial court misunderstood that it had … discretion [to impose either concurrent or consecutive sentences]." Additionally, the People contend any error was not prejudicial because "it is not reasonably probable that the trial court would have sentenced [defendant] any differently." Finally, the People assert defense counsel was not ineffective for failing to object.

First, it is true a defendant is not permitted to raise for the first time on appeal claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. (*People v. Scott* (1994) 9 Cal.4th 331, 353.) However, defendants are entitled to sentencing decisions based on "informed discretion," and there can be no exercise of such discretion where the court is unaware of its discretionary powers.

15.

(*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.)  Additionally, even if this issue was forfeited, defendant argues his counsel was ineffective for failing to object.  Thus, we proceed to the merits of defendant's argument.

In *People v. Deloza*, 18 Cal.4th 585, the defendant entered a furniture store with an armed companion who pointed a gun at a salesperson while the defendant took $1,200 from the cash register, $200 from the wallet of another salesperson, and the purse of a female customer who approached him, before the two fled.  (*Id.* at p. 589.)  The defendant was convicted of four counts of second degree robbery.  (*Ibid.*)  On those facts, the California Supreme Court held the offenses were committed on the same occasion within the meaning of section 1170.12, subdivision (a)(6) and (7), the language of which, at the time, paralleled the language of section 667, subdivision (c)(6) and (7).[1]  (*Deloza*, *supra*, at pp. 594–596.)  The *Deloza* court held "defendant entered a furniture store, robbed four victims, and left.  His robberies were committed in one location, and were apparently brief in duration.  They were committed essentially simultaneously against the same group of victims, i.e., persons in the furniture store.  While [the patron whose purse was stolen] approached defendant, his criminal activity was not thereby interrupted, but merely continued with her as an additional victim.  Nor was there any other event that could be considered to separate one 'occasion' of robbery from another.  Given the close temporal and spatial proximity of defendant's crimes against the same group of victims, they were clearly committed on the 'same occasion,' regardless of what additional factors may be found relevant in defining the precise parameters of this phrase in future cases."

---

[1]We note, as defense counsel did, Proposition 36 amended section 1170.12, subdivision (a)(7), which previously paralleled the language of section 667, subdivision (c)(7).  (See § 1170.12, subd. (a)(7).)  Section 1170.12, subdivision (a)(7) no longer refers to paragraph (6) as it once did.  The Attorney General does not argue the amendment to section 1170.12 affects the trial court's discretion to sentence defendant concurrently in this case.  Additionally, *People v. Torres* (2018) 23 Cal.App.5th 185, which interpreted the effect of the amendment to section 1170.12, subdivision (a)(7), also establishes the amendment does not compel a different result.  (*Torres*, at pp. 196-202.)  Because this issue was not raised by the parties, we do not address it further.

16.

(*Id.* at pp. 595–596; see *People v. Hendrix*, *supra*, 16 Cal.4th at pp. 510–511, 514 [parties conceded and trial court held current serious and violent felony convictions were "committed on the same occasion" where defendant was convicted of two counts of robbery and two counts of attempted robbery after approaching four people at a table and demanding money at gunpoint].)

Similarly here, defendant's attempted second degree robbery of Ward and assault with a deadly weapon of Rodriguez occurred in close temporal and spatial proximity of each other—they occurred within minutes of each other in the store and continued right outside of it. As in *Deloza*, Rodriguez and Ward were part of the same group of victims, i.e., the persons in the store. Thus, the offenses were committed on the "same occasion" such that consecutive sentencing was not mandatory under subdivision (c)(6) or (7) of section 667. (See *People v. Deloza*, *supra*, 18 Cal.4th at pp. 595–596; *People v. Hendrix*, *supra*, 16 Cal.4th at p. 514; cf. *People v. Lawrence* (2000) 24 Cal.4th 219, 228–234 [defendant's convictions were not committed on the same occasion and did not arise from "the same set of operative facts" because first crime was directed toward one group of victims and second involved unrelated pair of victims where defendant initially shoplifted bottle of liquor from market then trespassed into victims' backyard before assaulting them].)

Contrary to this conclusion, the record before us reflects the probation report erroneously advised the trial court "[p]ursuant to PC 667(c)(7), the terms in Counts One and Two are mandated to be imposed consecutively." Defense counsel compounded this error by also stating consecutive sentencing of these counts was required. Additionally, the trial court referred to subdivision (c)(7) of section 667 in ordering the sentences on counts 1 and 2 run consecutively. This "suggests the court did not believe it had discretion to sentence [defendant] concurrently on [these counts], inasmuch as that provision states in part the court '*shall* impose the sentence for each conviction *consecutive* to the sentence for any other conviction for which the defendant may be

17.

consecutively sentenced in the manner prescribed by law.'  (Italics added.)"  (*People v. Byrd* (2011) 194 Cal.App.4th 88, 105.)

On this record, we cannot conclude the trial court was aware it had discretion to sentence defendant either concurrently or consecutively on counts 1 and 2, nor does the record clearly indicate the trial court would have reached the same conclusion had it known it had such discretion.  Thus, we remand the matter for a new sentencing hearing for the trial court to consider and exercise its discretion.  (See *People v. Deloza*, *supra*, 18 Cal.4th at p. 600 [remand for resentencing was required where record reflected court misunderstood scope of its discretion to impose concurrent sentences for defendant's current convictions, and erroneously believed consecutive sentences were mandatory]; *People v. Byrd*, *supra*, 194 Cal.App.4th at p. 105 [trial court had discretion to sentence defendant concurrently but "did not understand it had such discretion and/or that it properly exercised that discretion" and remanding for new sentencing hearing on that count].)

### III.  Challenge to Restitution Order[*]

Defendant next challenges the victim restitution order as "open-ended" and "arbitrary and capricious in that it exceeded the court's statutory grant of authority."

#### A.  Relevant Factual Background

During the sentencing hearing, the court ordered victim restitution as to Rodriguez, Ward, and the store:

> "The defendant is to make restitution to Mr. Rodriguez, Ms. Ward, and to [the store] for any economic loss they may have suffered as a result of his conduct pursuant to … section 1202.4(f).  The Court understands that this was merely an attempted robbery and that there was no property taken from [the store], but the Court is unaware of whether there was any damage done to the door which was shown in the video, when there was the interaction between [defendant] and other [store] employees.  Also, the Court is unaware of whether there has been any medical attention sought by

---

[*]See footnote, *ante*, page 1.

Mr. Rodriguez for any injury he may have incurred as a result of [defendant]'s conduct."

The abstract of judgment provides the victim restitution amount per section 1202.4, subdivision (f) is "to be determined."

## B. Applicable Law

Victim restitution is mandated by the California Constitution, which provides in relevant part: "Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss," unless compelling and extraordinary reasons exist to the contrary. (Cal. Const., art. I, § 28, subd. (b)(13)(B).) To that end, section 1202.4, subdivision (f) provides:

> "(f) Except as provided in subdivisions (q) and (r), in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. *If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court.…*

> "(1) The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution. The court may modify the amount, on its own motion or on the motion of the district attorney, the victim or victims, or the defendant. If a motion is made for modification of a restitution order, the victim shall be notified of that motion at least 10 days prior to the proceeding held to decide the motion. A victim at a restitution hearing or modification hearing described in this paragraph may testify by live, two-way audio and video transmission, if testimony by live, two-way audio and video transmission is available at the court." (Italics added.)

Section 1202.46 permits the trial court to retain jurisdiction for purposes of imposing or modifying a victim restitution order:

> "Notwithstanding Section 1170, when the economic losses of a victim cannot be ascertained at the time of sentencing pursuant to subdivision (f) of Section 1202.4, the court shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution until such time as the losses may be determined. This section does not prohibit a victim, the district attorney, or a court on its own motion from requesting

19.

correction, at any time, of a sentence when the sentence is invalid due to the omission of a restitution order or fine pursuant to Section 1202.4."

## C.    Analysis

Defendant argues the court's victim restitution order constitutes an illegal sentence and should be reversed because it does not provide "who is to determine the amount of restitution or how, nor does it include the provision that [defendant] [may] seek judicial review of any order" or require compliance with section 1202.4, subdivision (f) or due process.  The People argue defendant forfeited this claim by failing to object below and it also fails on its merits.

In support of his argument, defendant argues *People v. Lunsford* (1998) 67 Cal.App.4th 901 stands for the proposition a court's open-ended restitution order must mention the agency tasked with determining the amount of victim restitution.  In *Lunsford*, the Court of Appeal held the restitution order in that case complied with section 1202.4, subdivision (f) "in that it 'directs' the Office of Revenue Reimbursement to 'determine' the amount of victim restitution because the proper amount could not be ascertained at the time of sentencing."  (*Lunsford*, at p. 903.)

However, contrary to defendant's argument, the plain language of section 1202.4, subdivision (f) does not mandate that a court must specify in its order the agency that will determine the appropriate amount of victim restitution or that a defendant may dispute the determination of the amount of restitution.  (See § 1202.4, subd. (f).)  We decline to read such a requirement into the statute.  (See *People v. Guzman* (2005) 35 Cal.4th 577, 587 [inserting additional language into a statute "'violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes'"].)  Rather, section 1202.4, subdivision (f) in conjunction with section 1202.46 expressly authorizes a trial court to issue an open-ended victim restitution order and maintain jurisdiction to permit it to impose or modify the appropriate amount of restitution once the victim's losses can be determined.  (See §§ 1202.4, subd. (f), 1202.46.)  When the amount of victim restitution is determined, defendant has the right to a hearing before a judge to dispute the

20.

determination of the amount of restitution.  (See § 1202.4, subd. (f)(1).)  Thus, defendant is currently on notice this matter is not closed, and he is entitled to notice and a hearing once the amount of restitution is determined.  Accordingly, he has failed to establish a violation of his due process rights.  (See *People v. Bufford* (2007) 146 Cal.App.4th 966, 970–972 [rejecting defendant's due process challenge to victim restitution order and concluding trial court retained jurisdiction to order restitution from defendant, though she had served her sentence before final restitution hearing was held because §§ 1202.4, subd. (f)(1) and 1202.46 provide court retains jurisdiction over defendant subject to restitution order and no limitation upon when court must set restitution hearing]; *People v. Harvest* (2000) 84 Cal.App.4th 641, 652 [noting "there is no express statute of limitation on the matter of victim restitution" and that "issue [of victim restitution] was reserved at the initial hearing—and never protested by defendant—put him on notice that the matter was not closed"].)

We reject defendant's third contention.

## IV.   Remand for Consideration of Senate Bill 620[*]

Senate Bill 620, signed into law on October 11, 2017, amended sections 12022.5 and 12022.53 to provide the trial court with discretion to dismiss, in furtherance of justice, firearm enhancements imposed pursuant to sections 12022.5, subdivision (c) and 12022.53, subdivision (h).  The new law took effect on January 1, 2018.  The law is applicable to those parties, like defendant, whose appeals are not final on the law's effective date.  (*People v. Woods* (2018) 19 Cal.App.5th 1080, 1090–1091; *People v. Robbins* (2018) 19 Cal.App.5th 660, 678–679.)

Here, the jury found true a firearm enhancement pursuant to section 12022.53, subdivision (b) as to count 1 (attempted second degree robbery) and another firearm enhancement pursuant to section 12022.5, subdivision (a) as to count 2 (assault with a firearm).  At the time defendant was charged, convicted, and sentenced, sections 12022.5

---

[*]See footnote, *ante*, page 1.

21.

and 12022.53 did not provide the trial court discretion to strike these firearm enhancements. Defendant now seeks remand for a new sentencing hearing to permit the court to exercise its discretion regarding whether to strike the firearm enhancements in light of Senate Bill 620. The People concede Senate Bill 620 applies retroactively, but contend remand is not appropriate because the record shows the court would not change its sentencing decisions "because it intended for [defendant] to be sentenced to the full extent possible in this case."

The Supreme Court has held: "'A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, … the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; see *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.)

The People cite *People v. Gutierrez* (1996) 48 Cal.App.4th 1894 in support of their position remand is unnecessary here. However, *Gutierrez* is distinguishable because there, the trial court indicated it would not have exercised its discretion to lessen the sentence, clearly stating on the record it did not find "'any good cause to strike'" the prior conviction at issue and "'a lot of reasons not to,'" concluding the defendant was "'the kind of individual the law was intended to keep off the street as long as possible.'" (*Id*. at p. 1896.) Unlike in *Gutierrez*, here the trial court sentenced defendant to additional 10-year terms based on the firearm enhancements without further comment. Though the trial court declined to strike one of defendant's previous strike convictions and it selected the aggravated term on count 2 noting defendant "is a serious danger to society"—strongly suggesting it would not have exercised its discretion to minimize his prison term—these statements relate to the court's decision to impose the upper term for count 2 and were

not made in the context of imposing the firearm enhancements. And the record does not reflect the court knew it had discretion to strike defendant's firearm enhancements, nor does it reflect a clear indication by the trial court that it would not have struck these enhancements if it had discretion to do so. Additionally, as noted herein, the matter is being remanded for other sentencing issues.

Under these circumstances, while we offer no position on how the trial court should act when exercising its newfound discretion under Senate Bill 620, we conclude the trial court at resentencing may consider whether to strike the enhancements imposed pursuant to sections 12022.5, subdivision (a), and 12022.53, subdivision (b).[2]

## V. Mental Health Diversion

In his second supplemental brief, defendant contends recently enacted section 1001.36, which allows for the pretrial diversion of certain defendants with mental disorders, applies retroactively and his case should be conditionally reversed and remanded to permit the trial court to exercise its discretion regarding whether to permit him to seek mental health diversion. We disagree conditional reversal and remand on this basis are necessary in this case.

### A. Relevant Factual Background

Before trial, defendant entered a plea of not guilty by reason of insanity. The court appointed Drs. Howard Terrell and Luis Velosa to conduct a section 1026 examination of the defendant and deliver reports regarding their findings. Drs. Terrell and Velosa opined defendant was sane, and the jury ultimately rejected defendant's insanity defense.

---

[2]The People also argue "the stay that the trial court imposed on count three took into account that there were firearm enhancements imposed on counts one and two" and that "[i]f remand is ordered, reconsideration of this sentencing decision should also be examined." This argument is without merit. The court concluded it would stay the aggravated sentence on count 3 under section 654 "because the events were so close in time with … the assault and attempted robbery as to become part of the same unlawful act."

23.

During the sentencing hearing, defendant noted he "need[s] some help as far as being properly treated, rehabilitated, and given a chance to be a better citizen." His counsel argued defendant "does have mental health issues" and "[t]hey are detailed in the documents" defense counsel obtained from the jail and state prison system. He urged the court to consider some sentencing relief, including striking one of defendant's earlier strikes in light of defendant's mental health history. The court responded it did not know a *Romero* motion was going to be made nor was "privy to any of the documents that [defense counsel] suggest[ed] show that [defendant] has a mental history that the Court should take into consideration."

Defense counsel provided the court with copies of records related to defendant's mental health history while he was previously incarcerated. The prosecutor noted "even a layperson could see that the defendant was suffering while he was in the Department of Corrections from anxiety and depression" but he did not "see any diagnosis while [defendant was] in custody … for bipolar or any other much more severe psychiatric disorder or medication that would suggest that he had been diagnosed with those …. [I]t appears he self-reported bipolar disorder once he was in the jail."

The court denied defendant's *Romero* motion explaining:

> "[W]hatever mental or physical condition the defendant may have been suffering from had no bearing whatsoever on his conduct, and therefore, had no ability to reduce his culpability for the crimes he was convicted of in this case.

> "It is very clear, based upon the video recorded interview of the defendant within two hours after the conduct that he was not operating under any type of allusion [*sic*], he clearly knew exactly what he was doing, he clearly stated during the videotaped event itself that it was clear he was making demands of the clerk, he was trying to prevent [Mr.] Rodriguez from getting involved because he knew exactly what he was doing. He knew it was wrong. He was not operating under anything that would suggest that he did not know what he was doing or that he was under any distress of any type other than he was trying to get some money.

24.

"It is difficult because [defendant], by all appearances, as he is sitting here today, and frankly as he sat during the trial is an individual who can comply with the law, can conduct himself appropriately and is very articulate, speaks very well. But he seems to think it's okay to attempt to use robbery as a means of attaining money. The [store] is not an ATM. And unfortunately that is the way [defendant] viewed it. Even to the point of using a real gun, a loaded firearm, not what he testified to as being a BB gun or a replica. So that is very troubling to the Court."

**B.      Standard of Review and Applicable Law**

Effective June 27, 2018, the Legislature created a diversion program for defendants with diagnosed and qualifying mental disorders such as schizophrenia, bipolar disorder, and posttraumatic stress disorder. (§ 1001.36, subd. (b)(1).) One of the stated purposes of the legislation was to promote "[i]ncreased diversion of individuals with mental disorders … while protecting public safety." (§ 1001.35, subd. (a).)

"'[P]retrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (c).)

"On an accusatory pleading alleging the commission of a misdemeanor or felony offense, the court may, after considering the positions of the defense and prosecution, grant pretrial diversion … if the defendant meets all of the requirements …." (§ 1001.36, subd. (a).) There are six requirements. (*Id.*, subd. (b)(1).) First, the court must be "satisfied that the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders." (§ 1001.36, subd. (b)(1)(A).) "Evidence of the defendant's mental disorder shall be provided by the defense and shall include a recent diagnosis by a qualified mental health expert." (*Ibid.*) Second, the court must also be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(1)(B).) "A court may conclude that the defendant's mental disorder was a significant factor in the commission of the charged offense if, after reviewing any relevant and

25.

credible evidence, … the court concludes that the defendant's mental disorder *substantially contributed* to the defendant's involvement in the commission of the offense." (*Ibid*., italics added.) Third, "a qualified mental health expert" must opine that "the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment." (§ 1001.36, subd. (b)(1)(C).) Fourth, subject to certain exceptions, the defendant must consent to diversion and waive his or her right to a speedy trial. (§ 1001.36, subd. (b)(1)(D).) Fifth, the defendant must agree "to comply with treatment as a condition of diversion." (§ 1001.36, subd. (b)(1)(E).) And finally, the court must be "satisfied that the defendant will not pose an unreasonable risk of danger to public safety … if treated in the community." (§ 1001.36, subd. (b)(1)(F).)

If a trial court determines that a defendant meets the six requirements, then the court must also determine whether "the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (c)(1)(A).) The court may then grant diversion and refer the defendant to an approved treatment program. (*Id*., subd. (c)(1)(B).) "The period during which criminal proceedings against the defendant may be diverted shall be no longer than two years." (*Id.*, subd. (c)(3).) If the defendant commits additional crimes, or otherwise performs unsatisfactorily in diversion, then the court may reinstate criminal proceedings. (§ 1001.36, subd. (d).) However, if the defendant performs "satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings …." (*Id.*, subd. (e).)

**C.  Analysis**

Defendant and the People debate the retroactivity of section 1001.36. However, even if we were to assume, without deciding, the statute is retroactive, the record before us "clearly indicates" the trial court would not have found defendant eligible for diversion. Thus, we agree with the People that defendant is not entitled to remand for a mental health diversion eligibility hearing.

To be eligible for consideration for pretrial diversion, the trial court must be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense," meaning that it "substantially contributed" to defendant's commission of the offense. (§ 1001.36, subd. (b)(1)(B).) Here, the trial court had before it evidence of defendant's mental health history including defendant's medical records, his testimony regarding his mental health history, the prosecution's expert testimony regarding defendant's mental state, video evidence of the attempted store robbery, and the police interview with defendant shortly after the crimes took place. After considering such evidence, the court expressly stated on the record: "*[W]hatever mental or physical condition the defendant may have been suffering from had no bearing whatsoever on his conduct*, and therefore, had no ability to reduce his culpability for the crimes he was convicted of in this case." (Italics added.) Referring to defendant's video interview introduced at trial, the court concluded defendant "clearly knew exactly what he was doing, he clearly stated during the videotaped event itself that it was clear he was making demands of the clerk, he was trying to prevent [Mr.] Rodriguez from getting involved because he knew exactly what he was doing. He knew it was wrong. He was not operating under anything that would suggest that he did not know what he was doing or that he was under any distress of any type other than he was trying to get some money."

On this record, the trial court clearly indicated defendant's alleged mental health disorder was not a significant factor in his commission of the charged offenses, making him ineligible for diversion. Thus, remanding the matter to the trial court would be an idle act. (See *People v. Coelho* (2001) 89 Cal.App.4th 861, 889 ["reviewing courts have consistently declined to remand cases where doing so would be an idle act that exalts form over substance because it is not reasonably probable the court would impose a different sentence"]; see also *People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1391 [where court is unaware of discretionary sentencing choices, remand for resentencing is required

unless record "'clearly indicate[s]'" trial court would have reached same conclusion "'even if it had been aware that it had such discretion'"].)

Defendant relies upon the recently published case of *People v. Weaver* (2019) 36 Cal.App.5th 1103 in support of his argument a conditional remand is required for the trial court to hold a hearing to determine whether to grant diversion under section 1001.36. In *Weaver*, the Sixth Appellate District disagreed with our court's conclusion in *People v. Craine* (2019) 35 Cal.App.5th 744 that section 1001.36 does not apply retroactively. (*People v. Weaver*, *supra*, at pp. 1120–1121.) Instead, the *Weaver* court held nothing in the text of section 1001.36 is sufficient to overcome the presumption of *In re Estrada* (1965) 63 Cal.2d 740 that the statute applies to individuals whose convictions are not yet final on appeal. (*Weaver*, at p. 1121.) Relying upon *People v. Frahs* (2019) 27 Cal.App.5th 784, 791, review granted December 27, 2018, S252220, the *Weaver* court held remand is appropriate when "'the record affirmatively discloses that [the defendant] appears to meet at least one of the threshold requirements'" of section 1001.36. (*Weaver*, *supra*, at p. 1121.) It concluded "[t]he record here affirmatively discloses that Weaver appears to meet at least one of the threshold requirements, namely, he suffers from a diagnosed mental health disorder." (*Ibid*.) Thus, it conditionally reversed Weaver's conviction for the trial court to hold a hearing to determine whether to grant him diversion under section 1001.36. (*Weaver*, *supra*, at pp. 1121–1122.)

We find it unnecessary to reconsider or reaffirm the conclusion reached in *People v. Craine*. Notably, the opinions in *Weaver* and *Frahs* do not discuss whether the records in those cases disclosed a remand would be futile. But, as discussed, remand is not appropriate when it would be an idle act. And, here, the trial court's comments clearly indicate it would not find defendant eligible for mental health diversion. Thus, based on the specific facts and record of this case, remand is not required. (See, e.g., *People v. Cawkwell* (2019) 34 Cal.App.5th 1048, 1053–1054 [remand not appropriate because record established defendant was not eligible for diversion under § 1001.36 based on

28.

nature of convictions requiring him to register under § 290].)  Accordingly, we decline defendant's request to conditionally reverse the judgment and remand for a mental health diversion eligibility hearing.

## VI.    Remand for Consideration of Senate Bill 1393*

Senate Bill 1393, signed into law on September 30, 2018, amends sections 667 and 1385 to provide the trial court with discretion to dismiss, in furtherance of justice, five-year enhancements pursuant to section 667, subdivision (a)(1).  The new law took effect on January 1, 2019.  The law is applicable to those parties, like defendant, whose appeals were not final on the law's effective date.  (*People v. Garcia* (2018) 28 Cal.App.5th 961, 973.)

Here, the trial court imposed five-year prior serious felony enhancements to defendant's sentences on counts 1 and 2 pursuant to section 667, subdivision (a). Defendant seeks remand to permit the trial court to review these five-year prior serious felony enhancements in light of Senate Bill 1393.  The People respond the court's language at sentencing reflects it would not have struck defendant's enhancements even if it had the discretion to do so; thus, remand is not required.

As discussed, when a court is unaware of the scope of its discretionary powers, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'  [Citations.]" (*People v. Gutierrez, supra*, 58 Cal.4th at p. 1391.)  While the People correctly argue the trial court denied defendant's presentence *Romero* motion requesting the trial court strike his two prior convictions because it found no reason to exclude him from the statutory scheme for sentencing a person under the three strikes law, the record before us does not reflect the trial court knew it had discretion to strike defendant's section 667, subdivision (a) enhancements; nor does it reflect a clear indication by the trial court that it would not have struck these

---

*See footnote, *ante*, page 1.

enhancements if it had discretion to do so. Accordingly, on remand for a resentencing hearing, the court is directed to consider whether to exercise its discretion to dismiss these enhancements.

## DISPOSITION

The matter is remanded to the trial court for a new sentencing hearing to permit the trial court to exercise its discretion regarding whether to sentence defendant concurrently or consecutively on counts 1 and 2 and whether to strike the firearm and/or prior serious felony enhancements in light of Senate Bills 620 and 1393. In all other respects, the judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
POOCHIGIAN, Acting P.J.


_____
DeSANTOS, J.