[No. A091657. First Dist., Div. Three. Apr. 30, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
ELIODORO DIEGUEZ, Defendant and Appellant.

[No. A093253. First Dist., Div. Three. Apr. 30, 2001.]

In re ELIODORO DIEGUEZ on Habeas Corpus.

## COUNSEL

Alexander Paul Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Jill M. Thayer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McGUINESS, P. J.**—Appellant Eliodoro Dieguez was convicted of perjury and one count of making a false material statement in support of a workers'

compensation claim, in violation of Insurance Code section 1871.4, subdivision (a)(1).[1] The jury also found the jurisdictional clause true as to the false material statement count, but not true as to the perjury count. The trial court granted appellant three years' felony formal probation, on the condition he serve a 120-day jail term as to which he could apply for electronic home detention.

On appeal, appellant contends we must reverse his conviction because the trial court failed sua sponte to give either a unanimity instruction pursuant to CALJIC No. 17.01, or an instruction on the element of specific intent to defraud with respect to the charge under section 1871.4. Both in his direct appeal and by way of petition for writ of habeas corpus, appellant contends he received ineffective assistance of counsel because of the failure of his trial attorney to seek an instruction on specific intent or to challenge the sufficiency of the evidence to confer jurisdiction on Contra Costa County to prosecute him under section 1871.4. We disagree with all of appellants' contentions, both on direct appeal and in his writ petition. We therefore deny the writ and affirm the judgment of the trial court.

### Factual and Procedural Background

Appellant began working for North Coast Couriers (North Coast) in 1989, at the age of 56. His job involved picking up and delivering interoffice mail and deposits for North Coast's clients, which were primarily banks. Appellant, a Spanish-speaker, could not speak English. However, the employees and supervisors with whom he dealt at North Coast were also Spanish-speaking. Over the years, appellant's employer gave him written warnings concerning his failure properly to complete his routing sheets. Appellant made a workers' compensation claim involving back pain in 1994. Appellant was off work for two months at that time. His claim was denied.

At approximately 5:00 p.m. on September 15, 1997, appellant called his dispatcher, William Martinez, and said he had a health problem and could not finish his route. Asked what kind of problem it was, appellant said he had "a ball in the rear-end" that was "hurting" him and preventing him from working. Appellant did not mention anything about his foot. When Martinez asked appellant to return the deliveries he had in his possession so North Coast could finish appellant's route for him, appellant refused, and instead told Martinez to "[s]end somebody to my house because I cannot continue." Appellant gave Martinez his address in Richmond, Contra Costa County.

Appellant did not report to work the next day, or anytime thereafter. Aura Beteta, North Coast's personnel manager, telephoned appellant at his home.

---

[1] Insurance Code section 1871.4 will be referred to as section 1871.4 in this opinion.

He told Beteta that he was not going to work because "I have a lump in my butt and my foot and I cannot drive." Appellant did not offer any other explanation for not coming to work. Specifically, he did not mention any work-related injury, make any statement about hurting himself lifting anything, state whether he was going to get medical attention, or mention injuring his back in February 1997. Beteta prepared a form report on appellant's claimed injury. Despite Beteta's repeated requests that appellant come into the office to sign the form and discuss his claimed injury, he never did so.

On September 23, 1997, appellant went to Dr. Esly Barreras, a practitioner of occupational medicine, complaining of low back pain with radiation down his right leg, and swelling on top of his right foot. Appellant told Dr. Barreras he had started developing lower back pain after carrying a box approximately eight months earlier, around January 1997. According to appellant, he had reported this alleged injury to his employer, which denied him medical treatment and told him he would be fired if he went to see a doctor. Appellant claimed that he had thereafter continued working as his back pain gradually worsened, until he stopped working on September 15, 1997. He went to an emergency room at an unidentified hospital in Richmond, where he was evaluated, prescribed medication, and advised to seek follow-up. Appellant did not tell Dr. Barreras anything that specifically happened on September 15 to cause him to stop working. In his examination of appellant, Dr. Barreras observed a nodule on the bottom of appellant's right foot, which Dr. Barreras diagnosed as unrelated to appellant's claim of back injury.

On November 5, 1997, an electromyography was performed on appellant to test for nerve damage in the lower back and legs. The results were negative, showing no nerve damage. On November 10, 1997, a magnetic resonance imaging (MRI) scan of appellant's lumbar spinal region showed a six-millimeter protrusion. For a man of appellant's age, this was considered "borderline abnormal," since such protrusions are more commonly found in older people.[2] Dr. Barreras testified that the finding in appellant's case was inconsistent with his story of having originally been injured in January or February 1997 and then suffering gradually increasing pain while continuing to work until September 1997.

In November 1997, appellant started complaining of problems in his arm and neck, claiming that these were also work-related. Tests on these areas of

[2] The record indicates appellant was born in 1933. Thus, he was approximately 64 years old in September 1997. Dr. Barreras testified that a protrusion of seven or eight millimeters would be "considered definitely abnormal," while a protrusion of less than five millimeters "may or may not be significant." According to Dr. Barreras: "[T]his is kind of a borderline area."

appellant's body were either normal or inconclusive. Dr. Barreras nevertheless found appellant partially disabled by his back complaints through September 13, 1998.

Appellant was deposed in San Francisco in connection with his workers' compensation claim in November 19, 1997. Among other things, appellant testified that he could not turn his head or bend his body because of neck pain dating from the date of his "injury" on September 15, 1997; he was unable to pick up things with his right arm "[a]lmost since the injury in September [1997] up to the present time"; prior to February 1997, he had never had any accidents involving, or received any medical treatment for, his back or neck; the "constant" pain in his back prevented him from lifting anything or bending down; since his alleged injury on September 15, 1997, he has been "absolutely" unable to raise his arms above his head, bend over at the waist, or squat because of pain in his back, shoulders and neck; and since the same alleged injury in September 1997, he has not done any chores around the house, garden, garage or his car.

On November 20, 1997, appellant saw orthopedic surgeon Dr. Ernest Weitz in San Francisco. Appellant told Weitz he had been injured in February 1997 lifting heavy packages on his job. He reported his injury to his employer, but was told that he would lose his route if he went to a doctor. He continued working until the work became too severe to do so on September 15, 1997. Appellant complained to Dr. Weitz of pain in his low back and his right knee, cramps in his right leg, weakness in his right arm, and pain in his neck; he claimed he was completely unable to bend forward from a standing position. According to Dr. Weitz, appellant "handled himself cautiously," avoiding moving his neck. Appellant was able to raise his arms overhead, although he complained of pain in his back and neck when he did so. Dr. Weitz testified that "[w]herever I touched him, he was tender." Appellant's grip tested considerably weaker than the average for a person his age; he complained it hurt if he gripped any harder. However, appellant was able to raise his legs at a 90-degree angle, straight up in the air while lying on his back or sitting. Dr. Weitz testified that this was inconsistent with appellant's claimed inability to bend over while standing, which duplicated the same movement.

Dr. Weitz concluded that appellant was exaggerating his symptoms in connection with his workers' compensation claim; there was an "obvious magnification" of appellant's "subjective complaints," which were clearly "excessive" based upon the findings of Dr. Weitz's physical examination. Although Dr. Weitz concluded appellant could return to work at North Coast, appellant did not appear interested in further employment or in any

vocational retraining. Dr. Weitz rated appellant's disability in the "A" category, the lowest level of disability, precluding only "[v]ery heavy lifting" of weights in excess of 60 to 70 pounds. Subsequently, Dr. Weitz received a videotape taken of appellant on October 30, 1997, in which appellant was seen "moving his neck all over the place," "looking around," "using a drill," "working overhead on the roof of a truck," "continuously . . . working with his arms overhead," and reaching "down to the floor to pick up a screw . . . with no difficulty doing that considering his huge abdomen." Based on what he saw on the videotape and appellant's statements in his deposition, all of which was inconsistent with appellant's statements and behavior in his office, Dr. Weitz lowered appellant's disability rating to halfway between category "A" and zero.

On January 4, 1999, the Contra Costa County District Attorney filed an information charging appellant with two counts of making or causing to be made a false and fraudulent material statement in support of a workers' compensation claim, in violation of section 1871.4, subdivision (a)(1), in connection with appellant's claims of injury made on September 18, 1997, and November 20, 1997; and one count of perjury in connection with his November 19, 1997, deposition. All three counts contained jurisdictional clauses; that for count three alleged pursuant to Penal Code section 781 that the charged offenses were committed "in part in Contra Costa County and in part in San Francisco County, and the acts and effects thereof and requisite to the consummation of the offense occurred in Contra Costa County and San Francisco County." On March 30, 2000, a jury found appellant guilty of perjury and one count of making a false material statement in support of a workers' compensation claim. The jury found the jurisdictional clause not true as to the perjury count, but true as to the materially false statement count. The trial court granted appellant three years' probation, with conditions including a 120-day jail term to be served on electronic home detention. This appeal timely followed.

## UNANIMITY INSTRUCTION

■    Appellant first contends the trial court prejudicially erred by failing sua sponte to give a unanimity instruction, using the words of CALJIC No. 17.01 or their equivalent, stating that in order to find him guilty of making a false workers' compensation claim in violation of section 1871.4, all the jurors must agree as to the statement or representation upon which they relied to base that conviction. The contention is meritless.

■    Although the record shows appellant did not request a unanimity instruction, such an instruction must be given sua sponte where the evidence

adduced at trial shows more than one act was committed which could constitute the charged offense, and the prosecutor has not relied on any single such act. (*People v. Riel* (2000) 22 Cal.4th 1153, 1199 [96 Cal.Rptr.2d 1, 998 P.2d 969]; *People v. Carrera* (1989) 49 Cal.3d 291, 311, fn. 8 [261 Cal.Rptr. 348, 777 P.2d 121]; *People v. Haynes* (1998) 61 Cal.App.4th 1282, 1294 [72 Cal.Rptr.2d 143].) On the other hand, no unanimity instruction is required when the acts alleged are so closely connected as to form part of one continuing transaction or course of criminal conduct. "The 'continuous conduct' rule applies when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them." (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100 [270 Cal.Rptr. 817, 793 P.2d 23]; see also *People v. Harris* (1994) 9 Cal.4th 407, 431-432, fn. 14 [37 Cal.Rptr.2d 200, 886 P.2d 1193].)

In closing argument, the prosecutor in this case told the jury that appellant could be found guilty on count 3 of the information if any one of the following series of statements and representations he made during a single appointment with Dr. Weitz on November 20, 1997, was in fact false: (1) he could not bend forward; (2) he originally injured himself in February 1997 by lifting packages, and was told by his employer at that time that he would lose his route if he sought medical attention; (3) he could not move his neck; (4) he could not walk without stumbling or staggering; (5) he had never suffered any previous back injury; and (6) he had been unable to use his right arm since September 1997 and could only lift 20 pounds. The prosecutor argued that in the case of each of these representations, appellant was lying; and that considered together, all of this evidence proved that appellant had made knowing, material false statements to Dr. Weitz with the specific intent of obtaining workers' compensation benefits, in violation of section 1871.4, subdivision (a)(1). In response, appellant argued a single defense: each false statement was the result of an innocent mistake in communication.

On the record before us, the continuous course of conduct exception clearly applies to the facts of this case. Each of the false statements alleged and relied upon by the prosecution were so closely connected as to form part of one continuing transaction. All the statements were made at the same appointment with Dr. Weitz; they were successive, compounding, and interrelated one to another; they were all aimed at the single objective of obtaining workers' compensation benefits; and they were barred from multiple punishment by Penal Code section 654. Appellant's statements grossly exaggerating the scope and nature of his claimed injuries during his one physical examination with Dr. Weitz were so closely connected in time and purpose that they clearly formed part of a single, continuous transaction. Moreover, appellant offered exactly the same defense to each of his false

statements. There was no reasonable factual basis for the jury to distinguish between appellant's various statements, and no reasonable legal basis to distinguish between them in establishing a single offense of making a false statement to obtain workers' compensation benefits under section 1871.4. Thus, no unanimity instruction was required. (*People v. Stankewitz, supra,* 51 Cal.3d at p. 100; see also *People v. Harris, supra,* 9 Cal.4th at pp. 431-432, fn. 14.)[3]

## INSTRUCTIONS ON SECTION 1871.4

██ Next, appellant contends the trial court had the sua sponte duty to include the element of specific intent to defraud in its instructions on the elements required for conviction under section 1871.4, subdivision (a)(1), and erred prejudicially in omitting this element. Appellant is mistaken.

██ In reviewing any claim of instructional error, we must consider the jury instructions as a whole, and not judge a single jury instruction in artificial isolation out of the context of the charge and the entire trial record. (*People v. Haskett* (1990) 52 Cal.3d 210, 235 [276 Cal.Rptr. 80, 801 P.2d 323]; *People v. Nichols* (1967) 255 Cal.App.2d 217, 222-223 [62 Cal.Rptr. 854].) When a claim is made that instructions are deficient, we must determine whether their meaning was objectionable as communicated to the jury. If the meaning of instructions as communicated to the jury was unobjectionable, the instructions cannot be deemed erroneous. (*People v. Benson* (1990) 52 Cal.3d 754, 801 [276 Cal.Rptr. 827, 802 P.2d 330]; *People v. Warren* (1988) 45 Cal.3d 471, 487 [247 Cal.Rptr. 172, 754 P.2d 218].) The meaning of instructions is no longer determined under a strict test of whether a "reasonable juror" *could* have understood the charge as the defendant asserts, but rather under the more tolerant test of whether there is a "reasonable likelihood" that the jury misconstrued or misapplied the law in light of the instructions given, the entire record of trial, and the arguments of counsel. (*Estelle v. McGuire* (1991) 502 U.S. 62, 70-75 [112 S.Ct. 475, 481-484, 116 L.Ed.2d 385]; *Boyde v. California* (1990) 494 U.S. 370, 378-381 [110 S.Ct. 1190, 1196-1198, 108 L.Ed.2d 316]; *People v. Kelly*

---

[3]Appellant contends the continuing course of conduct exception does not apply in this case because the prosecution charged two separate violations of section 1871.4. Appellant's argument fails. The first count, of which appellant was acquitted, concerned his statements to Beteta and his own attorney in connection with the submission of his workers' compensation claims to North Coast's workers' compensation insurance carrier on September 18, 1997. The third count concerned appellant's November 20, 1997, false statements to Dr. Weitz, who had been retained to give appellant a permanent disability rating. The facts on which the two counts were based were separated in time by over two months, and concerned two separate transactions in which appellant's criminal intent was factually distinguishable. Accordingly, the first and third counts did not form one continuous transaction for purposes of the unanimity instruction.

(1992) 1 Cal.4th 495, 525 [3 Cal.Rptr.2d 677, 822 P.2d 385]; *People v. Benson, supra,* 52 Cal.3d at p. 801.)

■ A defendant has a constitutional right to have the jury determine every material issue presented by the evidence. (Pen. Code, § 1093, subd. (f); *People v. Wilson* (1967) 66 Cal.2d 749, 764 [59 Cal.Rptr. 156, 427 P.2d 820]; 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, § 607, pp. 866-867.) Even in the absence of a request, a trial court must instruct on the general principles of law relevant to the issues raised by the evidence; that is, those principles that are closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. (*People v. Duncan* (1991) 53 Cal.3d 955, 969 [281 Cal.Rptr. 273, 810 P.2d 131]; *People v. Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].) On the other hand, a trial court may refuse to give an entirely accurate instruction if it is duplicative or there is no evidence to support it, and may modify any proposed instruction so long as the modifications are themselves correct and pertinent to the issues. (*People v. Noguera* (1992) 4 Cal.4th 599, 648 [15 Cal.Rptr.2d 400, 842 P.2d 1160]; *People v. Galvan* (1962) 208 Cal.App.2d 443, 452 [25 Cal.Rptr. 128]; 5 Witkin & Epstein, Cal. Criminal Law, *supra,* Criminal Trial, §§ 607-608, pp. 866-867.)

■ There is no error in a trial court's failing or refusing to instruct on one matter, unless the remaining instructions, considered as a whole, fail to cover the material issues raised at trial. As long as the trial court has correctly instructed the jury on all matters pertinent to the case, there is no error. The failure to give an instruction on an essential issue, or the giving of erroneous instructions, may be cured if the essential material is covered by other correct instructions properly given. (*People v. Noguera, supra,* 4 Cal.4th at p. 648; *People v. Honeycutt* (1946) 29 Cal.2d 52, 60-62 [172 P.2d 698]; *People v. Rhodes* (1971) 21 Cal.App.3d 10, 21 [98 Cal.Rptr. 249]; 5 Witkin & Epstein, Cal. Criminal Law, *supra,* Criminal Trial, §§ 663-667, pp. 952-960.) Similarly, although it is error for a trial court to give an "abstract" instruction which is correct in law but irrelevant to the case, in most cases this is only a nonprejudicial technical error which does not constitute grounds for reversal. (*People v. Rowland* (1992) 4 Cal.4th 238, 282 [14 Cal.Rptr.2d 377, 841 P.2d 897]; 5 Witkin & Epstein, Cal. Criminal Law, *supra,* Criminal Trial, § 668, pp. 960-961.)

■ In any event, we will not set aside a judgment on the basis of instructional error unless, after an examination of the entire record, we conclude the error has resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.) A miscarriage of justice occurs only when it is reasonably

probable that the jury would have reached a result more favorable to the appellant absent the error. (*People v. Wharton* (1991) 53 Cal.3d 522, 571-572, fn. 10 [280 Cal.Rptr. 631, 809 P.2d 290]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People v. Ramirez* (1969) 2 Cal.App.3d 345, 357 [82 Cal.Rptr. 665]; 5 Witkin & Epstein, Cal. Criminal Law, *supra*, Criminal Trial, §§ 663-668, at pp. 952-961.)

Section 1871.4, subdivision (a)(1) makes it unlawful to "[m]ake or cause to be made any knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying any [worker's] compensation . . . ." In relevant part, the trial court instructed the jury that a person is guilty of violating section 1871.4, subdivision (a)(1) if he or she "makes or causes to be made any knowing false or fraudulent material statement or material representation for the purpose of obtaining or denying any workers' compensation benefits." Further, the trial court specifically told the jury that "[i]n order to prove this crime," each of several "elements must be proved," including that the defendant made a "material" statement which he or she "knew . . . was false or fraudulent," and which "was made with the specific intent to obtain workers' compensation benefits."[4]

■ Thus the jury instructions given by the trial court followed the precise language of section 1871.4, subdivision (a)(1). The only specific intent required by the statute is the intent to obtain or deny workers' compensation benefits; this is what the jury was instructed. (*People v. Webb* (1999) 74 Cal.App.4th 688, 693 [88 Cal.Rptr.2d 259] [violation of § 1871.4, subd. (a)(1) requires that defendant knowingly make a false, material statement for the purpose of obtaining workers' compensation benefits].) Conceding that specific intent to defraud is not required by the language of section 1871.4, appellant nevertheless contends that it is implied, and should

---

[4]The trial court instructed the jury as follows: "The defendant is accused in counts one and three of having violated section 1871.4 of the Insurance Code.

"Every person who makes or causes to be made any knowing false or fraudulent material statement or material representation for the purpose of obtaining or denying any workers' compensation benefits is guilty of a violation of section 1871.4(a)(1) of the Insurance Code.

"A statement is material if it concerns a subject reasonably relevant to the investigation and if a reasonable insurer would attach importance to the fact represented.

"A statement is material even if it does not influence the ultimate decision to award benefits. The statement is material if it probably could have influenced the decision to award benefits.

"In order to prove this crime, each of the following elements must be proved:

"1) A person made or cause to be made a written or oral statement;

"2) The person knew the statement was false or fraudulent.

"3) The false or fraudulent statement was material.

"4) The false or fraudulent statement was made with the specific intent to obtain workers' compensation benefits."

be included as a required element in any jury instruction on that statute. The contention is meritless.[5]

A specific intent to defraud may be an implied element in a criminal statute making unlawful certain false or fraudulent claims, where the statute in question omits any other element of intent. (Pen. Code, § 550; *People v. Scofield* (1971) 17 Cal.App.3d 1018, 1025 [95 Cal.Rptr. 405]; *People v. Turley* (1953) 119 Cal.App.2d 632, 636 [259 P.2d 724].) Section 1871.4, subdivision (a)(1) expressly describes the intent required by that provision as "the purpose of obtaining or denying any [workers'] compensation." ■ Words used in a statute should be given the meaning they bear in ordinary use. There is no need for additional construction if the language is clear and unambiguous. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) ■ Because the language of section 1871.4, subdivision (a)(1) is clear and unambiguous, there is no need to insert a superfluous additional specific intent requirement.

Appellant necessarily acted with specific intent to defraud when he presented information he knew to be false with the intent that the insurance company rely upon it to settle his claim. (*People v. Booth* (1996) 48 Cal.App.4th 1247, 1254, fn. 3 [56 Cal.Rptr.2d 202].) The courts have held that "the intent to defraud the insurer is necessarily implied when the misrepresentation is material and the insured wilfully makes it with knowledge of its falsity." (*Cummings v. Fire Ins. Exchange* (1988) 202 Cal.App.3d 1407, 1418 [249 Cal.Rptr. 568].) "One who wilfully submits a claim, knowing it to be false, necessarily does so with intent to defraud." (*People v. Scofield, supra,* 17 Cal.App.3d at p. 1026.)

In any event, intent to defraud is actually "built into" the language of the instruction given by the trial court. In order to find all the elements listed in the instruction, a jury is required to determine that a defendant specifically intended to obtain workers' compensation by means of knowingly making false or fraudulent material statements. Because an intent to *commit* a fraud or "dishonest stratagem" is synonymous with an intent to defraud, a jury *necessarily* finds an intent to defraud when it convicts a defendant upon a

---

[5]This appears to be an issue of first impression. Although trial courts in workers' compensation fraud cases have, on occasion, given jury instructions to the effect that the People must prove that a defendant knowingly made false statements *both* for the purpose of obtaining workers' compensation benefits *and* with the specific intent to defraud (*People v. Adan* (2000) 77 Cal.App.4th 390, 393 [91 Cal.Rptr.2d 584]; *People v. Webb, supra,* 74 Cal.App.4th at pp. 693-696), no reported appellate case has ever specifically addressed the question whether such an instruction on specific intent to defraud *should* be added to the standard instruction for violations of section 1871.4, much less has actually held it mandatory to do so.

finding of all the elements listed in the subject instruction. (*People v. Booth, supra,* 48 Cal.App.4th at p. 1253; *People v. Gregory* (1990) 217 Cal.App.3d 665, 676 [266 Cal.Rptr. 527]; *People v. Griffith* (1953) 120 Cal.App.2d 873, 881 [262 P.2d 355].) On the instructions as given in this case, and contrary to appellant's assertion on appeal, the jury could not have convicted him without finding that he *knowingly lied* about his condition, as opposed to innocently exaggerating or magnifying his symptoms. Thus, when the jury found that appellant knowingly made false material statements and representations to Dr. Weitz with the specific intent to obtain workers' compensation benefits from North Coast's insurance carrier, it necessarily also found that he had a specific intent to defraud. (*People v. Scofield, supra,* 17 Cal.App.3d at p. 1026.) There was no error in instruction.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant makes two contentions of ineffective assistance of counsel in his writ petition. He asserts he received ineffective assistance from his trial counsel in two respects: first, for failing to request that the trial court include an instruction on specific intent to defraud in its general instruction on section 1871.4, subdivision (a)(1); and second, for not challenging the sufficiency of the evidence to confer jurisdiction under Penal Code section 781 to prosecute appellant in Contra Costa County. Neither contention of ineffective assistance has any merit.

■ In order to prevail upon a claim of ineffective assistance of counsel, appellant "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice. [Citation.] Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts. [Citation.] To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation . . . .' [Citation.] Finally, prejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 333 [75 Cal.Rptr.2d 412, 956 P.2d 374]; *Strickland v. Washington* (1984) 466 U.S. 668, 694 [104 S.Ct. 2052, 2068, 80 L.Ed.2d 674]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218 [233 Cal.Rptr. 404, 729 P.2d 839].)

■ With regard to counsel's failure to request an additional instruction on specific intent to defraud, there could be no deficiency in failing to

request an unnecessary instruction. As seen, the instructions given by the trial court on the necessary findings for conviction under section 1871.4, subdivision (a)(1) were both correct and sufficient under the law. Thus, there was no ineffective assistance in trial counsel's failure to request this superfluous instruction on specific intent to defraud.

Similarly, there was no ineffective assistance with respect to trial counsel's failure to challenge the sufficiency of the evidence on jurisdiction. Under Penal Code section 781, "[w]hen a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within *either* jurisdictional territory." (Italics added.) This provision was intended to broaden criminal jurisdiction beyond the rigid limits fixed by the common law in cases involving crimes committed in more than one jurisdiction. (*People v. Powell* (1967) 67 Cal.2d 32, 63 [59 Cal.Rptr. 817, 429 P.2d 137].) It has been liberally construed to vest venue in the county where the preliminary or preparatory acts for a crime took place, even though those preparations may not have constituted an essential element of the crime and the actual commission of the crime took place in a different county. (*People v. Price* (1991) 1 Cal.4th 324, 385 [3 Cal.Rptr.2d 106, 821 P.2d 610]; *People v. Douglas* (1990) 50 Cal.3d 468, 493 [268 Cal.Rptr. 126, 788 P.2d 640]; *People v. Bismillah* (1989) 208 Cal.App.3d 80, 89 [256 Cal.Rptr. 25]; *People v. Chapman* (1977) 72 Cal.App.3d 6, 11 [139 Cal.Rptr. 808].)

In this case, it was proper for the information to allege pursuant to Penal Code section 781 that the offense charged in count three under section 1871.4, subdivision (a)(1) was committed *in part* in Contra Costa County and in part in San Francisco County. Although appellant's false statements to Dr. Weitz took place in San Francisco County, the preparation therefor took place in Contra Costa County, where appellant lived, from whence he reported his alleged injuries to his employer, where he engaged in the various activities which evidenced the fact he was lying to Dr. Weitz, and where he would have received any of the workers' compensation benefits he was fraudulently trying to obtain. Interpreting Penal Code section 781 "in a commonsense manner with proper regard for the facts and circumstances of the case rather than technical niceties," (*People v. Bismillah, supra,* 208 Cal.App.3d at p. 85), we conclude jurisdiction was properly alleged in Contra Costa County. Necessarily, therefore, there was no ineffective assistance of counsel in a failure to challenge that jurisdiction.

## Disposition

The judgment is affirmed, and the petition for writ of habeas corpus is denied.

Corrigan, J., and Horner, J.,* concurred.

A petition for a rehearing was denied May 22, 2001, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 15, 2001. George C. J., and Werdegar, J., did not participate therein.

---

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.