Filed 9/17/20  P. v. Qualey CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY JAMES QUALEY,<br><br>    Defendant and Appellant. | B300220<br><br>(Los Angeles County<br>Super. Ct. No. PA091747) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed.

G. Martin Velez, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven E. Mercer and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

## INTRODUCTION

Timothy James Qualey (defendant) argues that his conviction for making criminal threats is invalid because he threatened his victim on two separate occasions and the jury was not given a unanimity instruction. Because the threats were so close in time as to "form part of one transaction," no unanimity instruction was required. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100 (*Stankewitz*).) We accordingly affirm his conviction.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

In October 2018, defendant and Jamie R. (Jamie) were in a dating relationship that involved "a lot" of "argu[ing] and fight[ing]." One Sunday evening that October, Jamie was at home in her condo with a male friend. Defendant called her, accused her of cheating on him with the friend, and told her, "Bitch, I'm going to come to your house and kill you." Frightened, Jamie and her friend decided to leave and got into Jamie's car. As she was driving down the driveway of her condo, defendant "jump[ed] out from behind a bush," stood in front of her car, and pulled out a knife. While looking Jamie in the eye, defendant said, "I'm going to kill you" and stabbed the hood of the car with a knife. When defendant pulled the knife from the hood and started to approach the driver's side of the car, Jamie hit the gas, bumped defendant to the ground, and drove to a nearby gas station.

Jamie recounted these events three times. She called 911 while driving to the gas station, and reported that defendant had "threatened" her "at [her] house" and "stabbed [her] car with a knife." And she spoke with two law enforcement officers—a Los Angeles County Sheriff's deputy at the gas station and a Sheriff's

2

detective the next day—and each time recounted the events set forth above.

Following his arrest, defendant called Jamie more than 120 times from jail. In those calls, Jamie told defendant that she "forg[a]ve" him; accepted defendant's proposal that he would marry her if she "g[o]t [him] out of here"; openly discussed whether to lie on the stand or to ignore the subpoena to testify at trial; and ultimately assured defendant that she knew "exactly what to say and . . . how to say it and everything."

## II.    Procedural Background

The People charged defendant with (1) making criminal threats (Pen. Code, § 422),[1] and (2) misdemeanor vandalism (§ 594, subd. (a)).[2] The People also alleged that defendant had "personally used a deadly and dangerous weapon" "in the commission of" the criminal threats offense (§ 12022, subd. (b)(1)). The People further alleged that defendant's 2009 conviction for robbery (§ 211) constituted a prior serious felony (§ 667, subd. (a)(1)) as well as a strike under our state's Three Strikes Law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)).

The matter proceeded to a jury trial. Defendant waived his right to counsel and represented himself. Despite providing the same account of what happened on the 911 call and to two law enforcement officers and despite reminding defendant on one of

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    The People originally charged the vandalism count as a felony, but the trial court granted the People's subsequent motion to interlineate the charge to be a misdemeanor based on the value of the damage done to the car.

3

the jail calls that he had "fucken stabbed" her car, Jamie testified and disavowed all of her prior statements for a variety of reasons—including that (1) she could not "remember" what had happened because she was "off [her] medication," because she was "on drugs," and because she suffers from "post-traumatic stress disorder," and (2) she made it all up because she was "mad" at defendant. Defendant also testified and denied ever threatening Jamie.

The jury convicted defendant of both counts.

After defendant admitted his prior robbery conviction, the court imposed an 11-year prison sentence on the criminal threats count, comprised of six years for the underlying crime (calculated as a high-end base term of three years doubled due to the prior strike) plus five years for the prior serious felony. The court imposed but stayed a two-year enhancement for use of a dangerous or deadly weapon. The court imposed a concurrent, time-served jail sentence for the misdemeanor vandalism count.

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in not instructing the jury that it must unanimously agree upon *which* of defendant's threats to kill Jamie—the one on the phone or the one made in person—is the basis for the criminal threats charge. Because this is an instructional issue, our review is de novo. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 919.) We reject defendant's argument for two reasons—namely, there was no instructional error and, even if there was, it was harmless.

## I. No Instructional Error

A jury verdict must be unanimous. (Cal. Const., art. I, § 16.) Consequently, and as a general rule, "when the evidence

4

suggests more than one discrete crime, . . . the court must require the jury to agree on the same criminal act." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*); *People v. Grimes* (2016) 1 Cal.5th 698, 727 [looking to whether the evidence suggests more than ""'one discrete criminal event."'"]; *People v. Quiroz* (2013) 215 Cal.App.4th 65, 73 ["Where the evidence suggests that the defendant might have committed more than one crime, the court must instruct the jury that it must agree on *which* of the acts— and, hence, which of the *crimes*—the defendant committed."].) A defendant's separate acts do not suggest more than one discrete crime—and thus do not necessitate a unanimity instruction—if they "are so closely connected," including "closely connected in time," "as to form part of one transaction." (*Stankewitz*, *supra*, 51 Cal.3d at p. 100; *People v. Crandell* (1988) 46 Cal.3d 833, 875; *People v. Deidrich* (1982) 31 Cal.3d 263, 282.)[3] Courts are more likely to view separate acts as forming part of one transaction "when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them." (*Stankewitz*, at p. 100; *Crandell*, at p. 875.)

No unanimity instruction was required in this case because defendant's threats to kill Jamie were "so closely connected" that they constituted "part of one transaction." They were "closely

---

[3] A unanimity instruction is also not required where the statute creating the crime "contemplates a continuous course of conduct of a series of acts over a period of time." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.) The statute defining criminal threats is not such a statute (*People v. Salvato* (1991) 234 Cal.App.3d 872, 883 (*Salvato*)), so this branch of the rule governing unanimity instructions does not apply here.

connected in time" because defendant made his in-person threat to kill Jamie just minutes after he threatened to kill her over the phone. The threats were also made to the same person and with the same motive of punishing Jamie for perceived infidelity. Additionally, defendant offered the same defense to both— namely, "I didn't do it." And there was no other reasonable basis for the jury to distinguish between the two threats. On analogous facts, courts have consistently concluded that no unanimity instruction was necessary. (E.g., *People v. Percelle* (2005) 126 Cal.App.4th 164, 182 [defendant's acts occurred during a little over a one-hour period; no unanimity instruction required]; *People v. Dieguez* (2001) 89 Cal.App.4th 266, 275 [defendant's multiple false statements (to fraudulently obtain benefits) made during a single medical visit; no unanimity instruction required]; *People v. Haynes* (1998) 61 Cal.App.4th 1282, 1296 [defendant's acts occurred "just minutes and blocks apart and involved the same property"; no unanimity instruction required]; *People v. Mota* (1981) 115 Cal.App.3d 227, 233 [multiple sexual assaults over the course of one hour; no unanimity instruction required].)

Defendant offers three reasons why, in his view, a unanimity instruction was required. First, he argues that *People v. Melhado* (1998) 60 Cal.App.4th 1529 (*Melhado*) establishes, as a matter of law, that his two threats do *not* constitute "one transaction" and hence necessitated a unanimity instruction. He is wrong. *Melhado* held that a trial court erred in not giving a unanimity instruction when the defendant made an in-person threat to kill the victim at 9 a.m., left, and came back at 11 a.m. to make a similar threat; the victim had time in between the two visits to call the police and file a police report. (*Id.* at pp. 1533,

1535-1539.) Here, defendant's threats were mere minutes apart; as the solid wall of precedent cited above indicates, this distinction in timing is critical. Second, defendant contends that Jamie's conflicting testimony provided a reasonable basis for the jury to draw a distinction between the on-the-phone and in-person threats. Again, he is wrong. Jamie's trial testimony certainly conflicted with her 911 call and her contemporaneous statements to law enforcement insofar as she testified defendant never threatened her but previously reported that he did over the phone and in person. But her recanting was an all-or-nothing affair that provided no basis to distinguish *between* the separate acts. Lastly, defendant asserts that the prosecutor effectively conceded that defendant's acts were not part of "one transaction" when she argued that he "threatened to kill Jamie not once but twice." This assertion is legally and factually wrong. It is legally wrong because the argument of counsel does not excuse *this court* from having to "determine[] whether there is any 'reasonable basis' for the jury to distinguish between" the defendant's acts. (*People v. Harris* (1994) 9 Cal.4th 407, 431, fn. 14.) And it is factually wrong because it fixates on a single sentence and ignores the prosecutor's further argument that defendant's two statements together constituted "a very clear, immediate and unconditional *threat*." (Italics added.)

## II. Any Error Is Harmless

If there was any error in failing to give a unanimity instruction in this case, it was harmless beyond a reasonable doubt. (*Salvato, supra*, 234 Cal.App.3d at p. 884.) That is because (1) the jury found that the defendant personally used a deadly or dangerous weapon in the commission of the criminal threats crime, and (2) defendant used a knife only when he made

7

the in-person threat.  Accordingly, we know that the jury unanimously found that he committed a criminal threat during the in-person interaction, which is sufficient to sustain his conviction.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST