Filed 3/28/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B306081 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA108524) |
| v. | |
| LISA MARIA GARCIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. James D. Otto, Judge. Affirmed in part, reversed in part and remanded for resentencing.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Lisa Maria Garcia was found guilty of second degree robbery and assault with a deadly weapon. The court imposed an eight-year prison term, suspended execution of sentence and placed defendant on five years' formal probation. The court also imposed a 10-year protective order pursuant to Penal Code section 136.2, subdivision (i)(1).

Defendant raises multiple claims of instructional error, violation of her constitutional rights to a fair trial and to present a defense, prosecutorial misconduct, and ineffective assistance of counsel, and contends the court exceeded its authority in imposing the postconviction protective order. In supplemental briefing, defendant argues that in the event her convictions are not reversed, she is entitled to a remand for resentencing pursuant to new legislation passed during the pendency of this appeal.

We conclude the postconviction protective order pursuant to Penal Code section 136.2, subdivision (i)(1) must be vacated and that a remand for resentencing is warranted in light of the passage of Senate Bill 567 (2021–2022 Reg. Sess.) and Assembly Bill 124 (2021–2022 Reg. Sess.) while this appeal was pending. We otherwise affirm defendant's conviction.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was charged with second degree robbery (Pen. Code, § 211; count 1) and assault with a deadly weapon (§ 245, subd. (a)(1); count 2). A metal sign and a wooden toy were allegedly used as deadly weapons. As to the robbery count, it was alleged defendant used the metal sign as a deadly weapon in the commission of the robbery (§ 12022, subd. (b)(1)). It was further alleged defendant inflicted great bodily injury on the victim, K.V., in the commission of both offenses (§ 12022.7, subd. (a)).

2

The charges arose from an incident that occurred at a Boost Mobile store owned by K.V. in the City of Long Beach. On February 14, 2018, defendant went to the store to purchase two cell phones based on a promotion the store was offering at the time.

Jacqueline Aguilar was working at the store that day and assisted defendant in her purchase of the phones and activating them. Defendant had trouble setting up her e-mail account on the phones and Ms. Aguilar attempted to assist her to no avail. Defendant became frustrated and asked for a refund.

Ms. Aguilar called K.V. to explain what was going on with defendant. K.V., who was at her other store at the time, said she would come see if she could help. When K.V. arrived, she tried but was unable to resolve the problem. K.V. told defendant she could give defendant a refund, except for an $80 fee that could not be returned in accordance with Boost corporate policy. She also told defendant she could do a "hard reset" on the phones but it would take some time. Defendant became extremely angry and cursed at her. Defendant said she had waited long enough, needed to leave and wanted all of her money back. K.V. reiterated she could refund all but the $80 fee.

Defendant came around the customer counter toward K.V. and Ms. Aguilar, telling them she was going to take something "worth $300" in value. She yanked open the drawer under the cash register and rummaged through it, before grabbing K.V.'s personal cell phone which was sitting on the counter. Defendant took the cell phone and went back around to the front of the counter and began collecting her things and placing them in a bag, along with K.V.'s cell phone.

3

K.V. headed to the front door to close and lock it to prevent defendant from leaving with her cell phone. Defendant became "furious." K.V. was scared but continued to block the door and told defendant to return her cell phone. Defendant kept demanding to be let out of the store. Defendant hit K.V. with the bag containing the phones.

Defendant then picked up a large metal sign standing near the front entrance and repeatedly swung it at K.V., striking her several times. Defendant also repeatedly hit K.V. with a wooden toy (the toy had been sitting at the front of the store near some chairs as entertainment for customers' children). During the course of the attack, defendant also grabbed K.V.'s hair, knocked her to the ground and punched her several times in the face with her fist.

Ms. Aguilar, who was still behind the counter, called 911. She stayed on the phone with the operator answering questions about what was occurring until the police arrived.

K.V. received numerous scratches and bruises to her face, neck, chest and arms and needed three staples to close the laceration to her scalp caused by one of the blows to her head.

Defendant testified she became exasperated because she believed K.V. and Ms. Aguilar were attempting to defraud her and refused to give her money back despite not being able to set up her phones properly. She claimed they never said she could have a refund minus an $80 fee. Defendant said she grew increasingly angry after spending so much time in the store and being lied to. She claimed she had no intent to steal anything and that she only came around the counter to look for a burglar alarm button. She believed most stores had such buttons in order to summon the police and she wanted the police to come

and help her.  Defendant said she "panicked" after K.V. locked her in and held her "hostage."  She said it was K.V. who was insulting, "out of control," trying to "provoke" a fight and who "came after" her.

Defendant admitted she grabbed K.V.'s phone from the counter and placed it in her bag, but that she only wanted to call the police with it.  She was unable to explain why she did not call 911 after taking the phone.  She also admitted hitting K.V. with the metal sign and the wooden toy, punching her and pulling her hair.  She said she only did those things because she was frightened and wanted out of the store.  She claimed to have initially picked up the metal sign to break a window to escape, not to hurt K.V.

The store's security cameras recorded the incident from several angles and those recordings were shown to the jury and received into evidence.  The video recordings substantially corroborated K.V.'s and Ms. Aguilar's testimony about how the incident occurred.

The parties entered into a stipulation that informed the jury K.V. applied for a U-Visa as a victim of a crime and that if the visa was granted, K.V. could obtain "lawful status for up to four years, work authorization and eligibility to adjust to a lawful permanent residen[t] after three years."

The jury found defendant guilty on both counts and found true the special allegations.

The court imposed a five-year upper term on count 1, plus a consecutive three-year term for the great bodily injury enhancement, and a concurrent three-year midterm on count 2.  The court suspended execution of the eight-year sentence and placed defendant on five years of formal probation.  The court

also ordered defendant to serve 84 days in jail and credited her with 84 days served. One term of probation required defendant to stay away from the Boost Mobile store where the incident occurred as well as the victim and all witnesses in the case. Additionally, the court imposed a 10-year criminal protective order pursuant to Penal Code section 136.2, subdivision (i)(1).

This appeal followed.

## DISCUSSION

### 1. The Jury Instructions

#### a. CALCRIM No. 875

Defendant contends the court failed to correctly instruct on the deadly weapon element for the assault count.

The court instructed with CALCRIM No. 875 which defines the elements of assault with a deadly weapon. The court used the correct language from the pattern instruction, with two exceptions. The court failed to include the bracketed paragraph that states "In deciding whether an object is a deadly weapon, consider all the surrounding circumstances." The Bench Notes state the bracketed paragraph should be given when the jury is required to determine whether an object was used as a deadly weapon. The court also failed to omit from the first sentence of the instruction the phrase "with force likely to produce great bodily injury." Defendant was only charged with assault with a deadly weapon and the phrase therefore should have been omitted.

Defendant argues these two errors in the written instruction were exacerbated by the court's oral reading of the instruction which deviated from the text. The court misspoke and used the disjunctive "or" in defining a deadly weapon as "one used in such a way that it is capable of causing *or* likely to cause

6

death or great bodily injury." The written instructions provided to the jury were correct and used the word "and."

Defendant failed to object or request the modifications to CALCRIM No. 875 that she now claims were erroneous. Defendant contends there is no forfeiture because the errors in the instruction "essentially eliminated" an element of the offense. We are not persuaded, and in any event, any errors were harmless beyond a reasonable doubt.

The two errors in the written version of the instruction were relatively minor, and defendant's argument disregards the well-established principles governing our review. In assessing the propriety of instructions, " '[w]e look to the instructions as a whole and the entire record of trial, including the arguments of counsel.' " (*People v. Quinonez* (2020) 46 Cal.App.5th 457, 465.) " '[A] jury instruction cannot be judged on the basis of one or two phrases plucked out of context . . . .' [Citation.] While a single sentence in an instruction 'may or may not be confusing, depending upon the context in which the sentence lies,' an instructional error ' " 'cannot be predicated upon an isolated phrase, sentence or excerpt taken from the instructions . . . .' " ' " (*Id.* at pp. 465–466.) Rather, " ' "[t]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " (*Id.* at p. 466.)

Reading the instructions according to these principles, the jury was fairly and correctly instructed. The court instructed the jury with CALCRIM No. 3145, which included the sentence that was omitted in CALCRIM No. 875, instructing the jury to consider all the circumstances in deciding whether an object was used as a deadly weapon. "The failure to give an instruction on

7

an essential issue, or the giving of erroneous instructions, may be cured if the essential material is covered by other correct instructions properly given." (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 277 (*Dieguez*).)

Similarly, the inclusion of the phrase "with force likely to produce great bodily injury" in the first sentence of the instruction was followed immediately by a listing of the elements of the offense the prosecution was required to prove, including that the defendant "did an act with a deadly weapon other than a firearm." The jury would not have been confused or misled into believing it could find defendant guilty of assault based on a use of force likely to produce great bodily injury even if she did not use a weapon.

Further, the prosecutor's argument bolstered the instructions. The prosecutor identified each of the elements of the offense, told the jurors the metal sign and the wooden toy were the objects used as deadly weapons, even though they were not ordinarily considered deadly or dangerous, and he focused them on the manner in which defendant used them in attacking K.V. There is no reasonable likelihood the jury misconstrued or misapplied the law given the totality of the instructions and the arguments of counsel. (*Dieguez*, *supra*, 89 Cal.App.4th at p. 276.)

As for the court's misstatement in reading the instruction, the Supreme Court recently reaffirmed the settled principle that a reviewing court presumes "the jury understands and follows the trial court's instructions, including the written instructions" and " '[t]o the extent a discrepancy exists between the written and oral versions of jury instructions, *the written instructions provided to the jury will control.*' " (*People v. Frederickson* (2020) 8 Cal.5th 963, 1026, italics added; accord, *People v. Osband*

8

(1996) 13 Cal.4th 622, 717 [no prejudice from misstatements in oral reading of instructions so long as jury is provided with correct written versions as "they govern in any conflict with those delivered orally"].)

Defendant has not shown anything in the record to rebut the presumption the jurors followed the written instructions that correctly stated the law.

Finally, the evidence of defendant's guilt was overwhelming, particularly the video footage of the incident which strongly corroborated K.V.'s testimony and belied defendant's claim of self-defense.

### b.      CALCRIM No. 3145

Defendant contends the instruction on the deadly weapon allegation for the robbery count was also inaccurate.

We are not persuaded by the various alleged deficiencies cited by defendant. Only one of the alleged errors warrants a brief discussion. The court instructed with the approved pattern language of CALCRIM No. 3145. However, as respondent concedes, the court erred in failing to omit the "inherently deadly" phrase at the beginning of the instruction.

The metal sign, alleged to be the deadly weapon used in connection with the robbery count, was plainly not an inherently deadly weapon as a matter of law. There is no reasonable likelihood the jury would have been confused on that point or unclear that their role was to determine whether the sign was used by defendant in a manner that rendered it a deadly and dangerous weapon, given the totality of instructions and the arguments of counsel.

However, to the extent the instruction was in error for including that phrase, it is subject to harmless error analysis.

9

(*People v. Aledamat* (2019) 8 Cal.5th 1, 13 [reversal for alternate theory error is not warranted if the reviewing court "after examining the entire cause, including the evidence, and considering all relevant circumstances . . . determines the error was harmless beyond a reasonable doubt"].) As we already explained above, the evidence of defendant's guilt was overwhelming, and the error was harmless beyond a reasonable doubt.

### c. Unanimity

Defendant contends the court prejudicially erred in failing to give a unanimity instruction informing the jury it had to agree on what specific object was used as a deadly weapon.

Defendant did not request a unanimity instruction. However, the court has a sua sponte duty to provide such an instruction where the evidence warrants it. (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.) " 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' [Citation.] [¶] On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).)

The evidence here did not warrant a unanimity instruction, so no sua sponte duty arose. *Russo* instructs that a unanimity instruction is not required where, as here, multiple related acts

10

" 'form the basis of a guilty verdict on one discrete criminal event.' " (*Russo*, *supra*, 25 Cal.4th at p. 1135.) "In deciding whether to give [a unanimity] instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*Ibid.*)

Defendant was charged with a single, discreet assault on K.V. During the course of the assault, which lasted several minutes, defendant used, as alleged in the information and argued by counsel, both the wooden toy and the metal sign to strike K.V. numerous times. There was no evidence suggesting multiple discreet assaults occurred.

Moreover, defendant offered one defense, contending only that she acted in self-defense in attacking K.V. because she wanted out of the store where she believed she was being wrongfully detained. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 879 (*Covarrubias*) ["a unanimity instruction is not required if 'the defendant offered the same defense to both acts constituting the charged crime, so no juror could have believed defendant committed one act but disbelieved that he committed the other"]; *Dieguez*, *supra*, 89 Cal.App.4th at p. 275 [unanimity instruction not required when acts alleged are "so closely connected as to form part of one continuing transaction or course of criminal conduct" and " 'the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them' "].)

11

Under the circumstances of this case, the jury was not required to find which object defendant used as a deadly weapon during the assault. Indeed, as we have already explained, the jury was correctly instructed it had to determine whether defendant used either the metal sign or the wooden toy in a manner that rendered them deadly weapons. However, the jurors were not required to unanimously agree that either was *the* deadly and dangerous weapon, so long as they did unanimously agree that *a* deadly and dangerous weapon was used in the assault.

### d.  The self-defense instructions

The court instructed the jury with the following pattern self-defense instructions:  CALCRIM Nos. 3470, 3471, 3472 and 3474.  The court also gave defendant's requested special instruction on lawful resistance which was a modification of CALCRIM No. 2670.

Defendant contends the court prejudicially erred in failing to define unlawful detention or false imprisonment and in instructing the jury that self-defense was not a defense to the robbery count.  Assuming for the sake of argument these were errors, they were harmless beyond a reasonable doubt.  While defendant testified at length about her efforts to defend herself, explaining that she "panicked" after K.V. locked her in and held her "hostage," and that it was K.V. who was insulting, "out of control," trying to "provoke" a fight and who "came after" her, the video footage of the incident disproved her claims of unlawful detention, false imprisonment and self-defense and corroborated the testimony of K.V.

### e.  The defense of property instruction

12

The defense of property instruction was included, at the prosecution's request, to address K.V.'s effort to detain defendant inside the store to prevent her from taking her personal property (her cell phone). Defendant forfeited the contention of error in giving this instruction by failing to object at trial. In any event, any error in the wording of the instruction was harmless beyond a reasonable doubt given the evidence of defendant's guilt and the prosecutor's argument which clearly explained to the jury the relevance of the instruction with respect to K.V.'s conduct after defendant took her personal cell phone and attempted to leave with it.

**f.     Duress and necessity**

Defendant contends the court had a sua sponte duty to instruct on duress and necessity. We disagree. A sua sponte duty arises only when the record contains substantial evidence supporting an instruction on duress and necessity. (See, e.g., *People v. Powell* (2018) 6 Cal.5th 136, 165.) The record does not contain substantial evidence supporting either instruction.

**2.     Rights to a Fair Trial and to Present a Defense**

Defendant argues the court violated her constitutional rights to a fair trial and to present a defense by striking a portion of her testimony and by refusing to allow her to argue that K.V. had engaged in criminal behavior by falsely imprisoning her in the store. We disagree.

In response to a question from her counsel about why she was fearful of K.V. and Ms. Aguilar, defendant testified that prior to the altercation with K.V., she heard Ms. Aguilar talking about her brother being in jail. The court sustained the prosecutor's relevance objection and struck the testimony. Defendant says the striking of her testimony prejudicially impacted her ability to

13

establish her defense and explain why she was in fear of both Ms. Aguilar and K.V. and felt the need to defend herself.

We review a trial court's ruling admitting or excluding evidence under the deferential abuse of discretion standard. (*People v. Hartsch* (2010) 49 Cal.4th 472, 497.) The trial court acted well within its discretion in concluding the testimony about Ms. Aguilar's brother being in jail was irrelevant. It did not meaningfully infringe on defendant's ability to present her defense that she felt K.V. was defrauding her and wrongfully detaining her inside the store, nor did it impact her right to a fair trial. (*People v. Boyette* (2002) 29 Cal.4th 381, 427–428 [the application of the ordinary rules of evidence does not impermissibly infringe on the right to present a defense].)

Defendant also argues the court violated her right to a fair trial by prohibiting her from arguing that K.V. had engaged in criminal conduct by falsely imprisoning her. During the discussion of jury instructions, the court said defendant was not allowed to argue K.V. committed a crime, explaining instead that defendant could argue she was being unlawfully detained in the store.

The jury was instructed on self-defense and lawful resistance to a merchant's unlawful detention. Defendant testified at length to her belief she was being wrongfully detained, and defense counsel argued self-defense and lawful resistance in closing. Defendant has not shown how she was deprived of a fair trial by the court's ruling she could not argue K.V. committed a crime.

3.    **The Prosecutor's Argument**

Defendant contends the prosecutor committed misconduct during closing argument by telling the jury it would have to find

14

K.V. was a criminal in order to conclude defendant was not guilty. Defendant contends the prosecutor's argument misstated the law, wrongfully shifted the burden to defendant to prove K.V. acted criminally and was particularly egregious after the court had ruled defendant was not allowed to argue criminal conduct on the part of K.V.

Defendant did not object to these purported statements during the prosecutor's presentation. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1328, italics added ["making a timely and specific objection at trial, *and requesting the jury be admonished* . . . , is a necessary prerequisite to preserve a claim of prosecutorial misconduct for appeal"].) After the closing arguments were concluded, defendant did make an objection at sidebar, but *did not ask for a curative instruction.* The court told counsel it believed the instructions on self-defense were clear but that it would remind the jury that what the attorneys said in argument was not the law and that they were to follow the court's instructions on the law.

Even if defendant's belated objection without asking for an admonition were adequate to preserve the contention for appeal, we would reject the claim on the merits.

In assessing the prosecutor's argument, we must "consider the assertedly improper remarks in the context of the argument as a whole. [Citation.] 'In conducting [our] inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Covarrubias, supra,* 1 Cal.5th at p. 894.)

The complained-of argument was part of the prosecutor's discussion of defendant's claim of self-defense to support his argument the claim was not credible. The prosecutor made

15

various comments that K.V. was the victim and was not the one who had acted criminally or done anything wrong. He said that if the jury accepted defendant's claim of self-defense and found her not guilty, they would be saying "essentially the defendant was the one who was correct and that K.V. was the criminal, was the one who did something wrong." This argument was not reasonably likely to confuse the jury, nor did it imply defendant bore the burden of proof to show K.V. acted criminally. The prosecutor quoted from the jury instructions and pointed out that he had the burden to prove defendant did not act in self-defense. The written instructions also correctly stated the law of self-defense and identified the prosecutor's burden in that regard. Defendant has not shown the prosecutor engaged in argument that can fairly be characterized as a " 'deceptive or reprehensible' " tactic to persuade the jury to convict. (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 854.)

**4.      Defendant's Trial Counsel**

Defendant contends her trial counsel was ineffective for "failing to object more vigorously" to the court's refusal to instruct on lawful resistance to the robbery count, "failing to object" to the defense of property instruction, failing to request duress and/or necessity instructions, failing to raise constitutional objections to the court's ruling restricting defendant's testimony and argument, "neglecting to impeach" K.V. about her U-visa application and "failing to object" to additional instances of prosecutorial misconduct.

Defendant has a heavy burden to establish ineffective assistance on direct appeal. Defendant must demonstrate "both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and

16

that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Cudjo* (1993) 6 Cal.4th 585, 623, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–696.)

As we have already explained, the evidence of defendant's guilt was overwhelming. Defendant has not shown it is reasonably probable she could have obtained a more favorable determination in the absence of counsel's alleged failings.

Moreover, most of the alleged claims of error qualify as litigation tactics. "[W]here the appellate record does not reveal whether counsel had a legitimate reason for a litigation choice, we generally reserve consideration of any ineffective assistance claim for possible proceedings on petition for writ of habeas corpus." (*People v. Snow* (2003) 30 Cal.4th 43, 95; accord, *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

We will address counsel's failure to cross-examine K.V. on her U-visa application because counsel admitted on the record that was an oversight on his part. Defense counsel and the prosecutor stipulated that K.V. had applied for a U-visa a couple of months after the incident. The stipulation was read to the jury, explaining that crime victims may apply for a U-visa, and that if K.V.'s visa application was granted, she could obtain "lawful status for up to four years, work authorization and eligibility to adjust to a lawful permanent residen[t] after three years."

Defense counsel argued during closing that because of her U-visa application, K.V. had a motive to lie about the incident and to exaggerate being a victim in order to potentially improve her chances of obtaining legal permanent residency. Defendant has not shown how she would have reasonably obtained a more

favorable outcome had counsel cross-examined K.V. about the application instead of relying on the stipulation.

**5.      Cumulative Error**

Defendant argues cumulative error for which a reversal is warranted.  We are not persuaded.  (*People v. Bradford* (1997) 15 Cal.4th 1229, 1382 [finding that to the extent any errors occurred, they were minor and "[e]ven considered collectively" they did not result in prejudice to the defendant].)

**6.      The Protective Order Pursuant to Penal Code Section 136.2**

The court imposed a 10-year postconviction protective order pursuant to Penal Code section 136.2, subdivision (i)(1). Respondent agrees with defendant the court erred in doing so. Section 136.2, subdivision (i) provides authority for the imposition of postconviction protective orders where a defendant is convicted of a qualifying *domestic violence* offense.  (See, e.g., *People v. Beckemeyer* (2015) 238 Cal.App.4th 461, 465–466.) Defendant's convictions for robbery and assault are not domestic violence offenses.  The court did not have statutory authority to impose the postconviction protective order, and it must be stricken.

### 7.     Remand for Resentencing

While this appeal was pending, the Governor signed Senate Bill 567 and Assembly Bill 124.  Both acts, which became effective January 1, 2022, made changes to the law under which defendant was sentenced.  We agree with the parties the changes effected by the new legislation apply retroactively to defendant's case as they are ameliorative in nature and therefore apply to all nonfinal appeals.  (*People v. Brown* (2012) 54 Cal.4th 314, 323 [discussing rule of *In re Estrada* (1965) 63 Cal.2d 740].)

As relevant here, the new legislation amended Penal Code section 1170, including changes affecting a trial court's discretion to impose an upper term sentence.  (Stats. 2021, ch. 731, § 1.3 [Senate Bill 567]; Stats. 2021, ch. 695, § 5.3 [Assembly Bill 124].)  Section 1170, subdivision (b)(2) now provides that an upper term sentence may be imposed only "when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."   Respondent concedes the trial court, in imposing the upper term on count 1, appears to have "relied upon factors in aggravation that were neither admitted by [defendant] nor found to be true beyond a reasonable doubt."

Accordingly, the upper term sentence on count 1 must be vacated and the case remanded for a new sentencing hearing.  On remand, the trial court may revisit all of its sentencing choices in light of the new legislation.  (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a

defendant"]; accord, *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "].) In reconsidering the sentence, the court may give further consideration to the terms of probation, including the prohibition on possession of deadly weapons.

## DISPOSITION

The upper term sentence on count 1 and the protective order imposed pursuant to Penal Code section 136.2, subdivision (i)(1) are reversed. The case is remanded to the superior court for resentencing. At the new sentencing hearing, the court may reconsider all of its sentencing choices in light of the amendments to Penal Code section 1170.

In all other respects, the judgment of conviction is affirmed.


GRIMES, Acting P. J.

WE CONCUR:


STRATTON, J.          HARUTUNIAN, J.[*]

---

[*]      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.