Filed 3/16/26  P. v. Tovar CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JASINTO TOVAR,<br><br>    Defendant and Appellant. | 2d Crim. No. B338286<br>(Super. Ct. No. BA490799;<br>BA490799-04; XCNBA490799-04)<br>(Los Angeles County) |

Jasinto Tovar appeals a judgment following his conviction after a jury trial for two counts of procuring or offering a false or forged instrument (Pen. Code, § 115, subd. (a); counts 1 and 3) and two counts of falsifying a certificate (Veh. Code, § 4463, subd. (a)(1); counts 2 and 4).  Imposition of sentence was suspended and Tovar was placed on probation for two years, with terms including 120 days in county jail.

Tovar contends the trial court improperly instructed the jury regarding general intent (CALJIC No. 3.30), thereby removing an element of the offense charged in counts 1 and 3, and depriving him of his rights under the Sixth and Fourteenth Amendments.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

*License Status*

In 2015, Tovar applied for a smog inspection station license doing business as La Familia Smog Check. The business address listed in the application is the same address for Josh Smog Center located in North Hollywood.

Tovar did not have a valid license to operate a smog station, nor did he have a smog technician license from October 2018 through June 2019.

*Bureau of Automotive Repair*

The Bureau of Automotive Repair (BAR) is a consumer protection agency that oversees and investigates violations of the Automotive Repair Act, smog inspections and repair laws. Smog inspections are required every two years. The average cost of a smog inspection ranges from $30 to $70. Smog inspection facilities and smog technicians are required to be licensed. A smog technician may not allow another person to use their license, nor are they permitted to allow another person to sign a vehicle inspection report (VIR) on their behalf.

*The Smog Inspection Process*

Vehicles manufactured in 2000 or after are smog inspected by using an On-board Inspection System (OIS). The OIS device consists of a monitor, computer, keyboard, bar code scanner and data acquisition device. A cable is plugged into the data acquisition device and vehicle which communicates information about the vehicle to the OIS which then determines if the vehicle passed or failed a smog inspection.

A smog inspection is a multi-step process that requires: 1) verification of the smog technician's license by either scanning a badge or inputting the user name and password to access the

2

OIS; 2) scanning the vehicle registration document to verify the registration and vehicle match; 3) conducting a visual inspection to confirm the vehicle's emissions components have not been tampered with; 4) conducting a functional check of the vehicle's computer for any diagnostic trouble codes; 5) performing tests of different components of the vehicle for emissions related concerns; and 6) visually verifying if the check engine light is illuminated. A vehicle with an illuminated check engine light cannot pass a smog inspection.

Once a vehicle passes a smog inspection, the OIS prints a VIR, also known as a smog certificate. A copy of the VIR is provided to the customer, and the certificate is transmitted electronically to the Department of Motor Vehicles (DMV).

There are "OBD [on board diagnostic tool] defeat devices]" capable of falsifying or defeating a smog inspection. One OBD defeat device brand carries a device known as an "OBDNATOR." These devices manipulate data from the vehicle so the OIS computer reports that there are no error codes in the system, allowing the vehicle to pass a smog inspection. It is unlawful to use such a device while performing a smog inspection.

<u>Investigations</u>

BAR conducted two undercover investigations of Smog Way between October 2018 and January 2019. BAR Investigators installed video recording equipment in two vehicles, a 2006 Toyota Camry and a 2007 Dodge Ram. Investigators manipulated both vehicles so they would fail smog inspections.

<em>November 2018, Investigation (Counts 1 and 2)</em>

A BAR investigator brought the Toyota Camry to Smog Way and paid $250 for a smog inspection. After failing a smog inspection at Smog Way, its owner told the investigator he would

get the vehicle to pass and drove away in the Toyota Camry.  He returned 30 minutes later and told the investigator the vehicle did not pass, and to return another day.   The VIR indicated that the smog inspection was performed at Josh Smog Center.  Josh Smog Center was located one to two miles away from Smog Way.

The investigator returned to Smog Way three days later.  A Smog Way employee drove the Toyota Camry to Josh Smog Center.  The video from the Toyota Camry showed Tovar at Josh Smog Center standing in front of the OIS system facing the keyboard while a second individual removed an OBD defeat device from a black bag and plugged it into the Toyota Camry. The OIS produced a VIR indicating the Toyota Camry passed the smog inspection.  Tovar placed the VIR inside the Toyota Camry. The VIR listed the smog technician as a third individual.

*January 2019, Investigation (Counts 3 and 4)*

On January 15, 2019, the investigator returned to Smog Way for a smog inspection of a 2007 Dodge Ram and paid $250. An employee drove the Dodge Ram to Josh Smog Center to get it "smogged."  The employee returned with a VIR indicating the Dodge Ram had passed the smog inspection.  Video footage shows Tovar holding an OIS scanner and entering data at the OIS console.  Tovar removed an OBD defeat device out of a black plastic bag and plugged it into a cable under the dashboard of the Dodge Ram.  A document was produced from the OIS and Tovar tossed it into the Dodge Ram.  The VIR submitted to the DMV indicates the smog technician was an individual who is never seen on video during the smog inspection on January 15, 2019. BAR performed a smog inspection on the Dodge Ram after the investigation, and it failed to pass.

4

A week after the smog inspection, a search warrant was executed at Josh Smog Center. Tovar was the only employee working at the time the warrant was executed. A BAR Investigator observed an OBDNATOR defeat device connected to a Toyota Prius. Investigators also seized smog technician badges for the individuals whose names were on the VIRs. Tovar presented investigators with a California identification card that belonged to someone else.

## DISCUSSION

Tovar contends the trial court improperly instructed the jury regarding general intent (CALJIC No. 3.30), removing the *knowledge* element of the offense, depriving him of his rights under the Sixth and Fourteenth Amendments. There is no reversible error.

### *Standard of Review*

Instructional error claims are reviewed de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579). "The independent or de novo standard of review is applicable in assessing whether [jury] instructions correctly state the law." (*People v. Posey* (2004) 32 Cal.4th 193, 218).

### *CALJIC No. 3.30*

The trial court instructed the jury with CALJIC No. 3.30, as follows:

"In the crime charged in counts 1 and 3, offering a false instrument, there must exist a union or joint operation of act or conduct and general criminal intent. General criminal intent does not require an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful."

5

Tovar argues that the trial court erred when it gave CALJIC No. 3.30, because by doing so it removed an element of counts 1 and 3. "The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense." (*People v. Merritt* (2017) 2 Cal.5th 819, 824.) The court also has a sua sponte duty to instruct on the required intent or mental state. (*People v. Alvarez* (1996) 14 Cal.4th 155, 220, *People v. Alvarado* (2005) 125 Cal.App.4th 1179, 1185, *People v. Jo* (2017) 15 Cal.App.5th 1128, 1160.) While CALJIC No. 3.30 did not provide the jury with the requisite specific mental state for the offense, the court did give CALJIC Nos. 15.06 and 1.21, which correctly instructed the jury of the required mental state for the offense.

Here, the trial court properly gave CALJIC No. 15.06 defining the elements for counts 1 and 3, as follows:

"The defendant, [Tovar], is accused in Counts 1 and 3 of having violated section 115, subdivision (a) of the Penal Code, a crime.

"Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered or recorded under any law of this state or of the United States, is guilty of a violation of Penal Code section 115, subdivision (a), a crime.

"In order to prove this crime, each of the following elements must be proved: [¶] 1. A person procured or offered a false or forged instrument to be filed, registered, or recorded in a public office of this state; [¶] 2. The instrument, if genuine, was one which it was proper to file, register, or record; and [¶] 3. The

6

person *knew* that the instrument was false or forged." (Italics added.)

The trial court also instructed the jury with CALJIC No. 1.21, as follows:

"The word 'knowingly,' means *with knowledge of the existence of the facts in question*. Knowledge of the unlawfulness of any act or omission is not required. A requirement of knowledge does not mean the act must be done with any specific intent." (Italics added.)

Together these instructions correctly instructed the jury that to find Tovar guilty of counts 1 and 3, they had to find that he *knew* the instrument was false or forged.

" 'In reviewing a claim of error in jury instructions in a criminal case, this court must first consider the jury instructions as a whole to determine whether error has been committed. [Citations.] We may not judge a single jury instruction in artificial isolation, but must view it in the context of the charge and the entire trial record.' " (*People v. Serrano* (2022) 77 Cal.App.5th 902, 909).) The failure to give an instruction on an essential issue, or the giving of erroneous instructions, may be cured if the essential material is covered by other instructions properly given. (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 277; see also, *People v. Castillo* (1997) 16 Cal.4th 1009, 1016.)

"In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution." (*People v. Mitchell* (2019) 7 Cal.5th 561, 579; see also, *People v. Wallace* (2008) 44 Cal.4th 1032, 1075). Here, the instructions as a whole were not misleading. It is not reasonably likely that by giving CALJIC No. 3.30, the trial

7

court misdirected the jury or led them to believe that knowledge of the falsity of the instrument was not required.

Tovar relies on *People v. Southard* (2021) 62 Cal.App.5th 424. The People argue that *Southard* is distinguishable. We agree with the People. In *Southard*, the defendant was charged with seven counts of forcible resisting arrest and obstructing a peace officer, and one count of possession of methamphetamine, all of which had an element dealing with his mental state. The trial court erroneously gave a special instruction that removed an element from the seven counts related to the resisting and obstructing charges. The court compounded the instructional error when it gave CALCRIM No. 250, instructing the jury that they could "convict defendant on all counts solely "if it found 'he intentionally [did] a prohibited act; however, it is not required that [he] intended to break the law.'" (*Southard*, *supra*, 62 Cal.App.5th at p. 437.)

Here, the trial court gave CALJIC No. 3.30, which instructed the jury that knowledge of the unlawfulness of any act or omission was not required. This instruction did not eliminate the requirement of knowledge that the instruments in question were *false or forged*, rather it told the jury that Tovar did not need to know that the act of offering or procuring a false VIR was *unlawful*. Here, unlike in *Southard*, the trial court's instructions did not remove an element of the offense.

The jury was instructed correctly on the required mental state in CALJIC Nos. 15.06 and 1.21. The claim that the general intent instruction in CALJIC No. 3.30 misdirected or misled the jury from applying the proper elements of the crime is unsupported by the record. The instructions effectively told the

jury that to find Tovar guilty of the offense, they had to find he knew that the VIRs were false or forged.

*Harmless Error*

Tovar contends the *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) "beyond a reasonable doubt" standard for assessing prejudice applies. The People argue that the *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) standard should apply. We need not decide whether the *Chapman* or *Watson* standard for prejudicial error applies here because the error was harmless under either standard.

Evidence of Tovar's knowledge of the false nature of the VIRs in this case was overwhelming. Tovar did not have a smog technician license nor a license to operate a smog inspection facility at any time during the investigation. In 2015, Tovar submitted an application for a smog inspection facility license which included the following notice, "you may not perform any activities at this location for which you are required to possess a valid Smog Station License, until a Smog Station License is issued." This was strong evidence that Tovar was aware that a license was required to perform smog inspections and was aware of the fraudulent nature of the VIRs he helped create and submit to the DMV.

Two separate undercover operations in this case yielded significant video evidence of Tovar's involvement in the fraudulent smog inspections of both the Toyota Camry and Dodge Ram. A video from the November 2018 investigation captured Tovar standing near the Toyota Camry, moving the OIS system closer to the vehicle, then positioning himself directly in front of it to input information. Meanwhile, another Josh Smog Center employee was inside the Toyota Camry connecting an OBD defeat

9

device.  Tovar placed the fraudulent VIR in the Toyota Camry after the smog inspection was complete.

During the second investigation in January 2019, Tovar is seen on video performing a smog inspection of the Dodge Ram. He is seen inputting data into the OIS system, removing an OBD defeat device from a black plastic bag and plugging it into the Dodge Ram.  Tovar never looked under the hood or performed any visible inspection of the Dodge Ram, which is necessary during a proper smog inspection.  Tovar placed the false VIR into the vehicle after the smog inspection.

When the search warrant was executed at Josh Smog Center, Tovar was conducting a smog inspection on a Toyota Prius with an OBDNATOR defeat device plugged into it. Investigators located two smog technician badges at Josh Smog Center, neither of which belonged to Tovar.  Tovar presented investigators with a California identification card belonging to someone else.  Contrary to Tovar's argument, he was not "simply present at the smog check and handling a VIR."  He was actively involved in the fraudulent smog inspections and was aware that the VIRs were false.

Furthermore, the jury convicted Tovar of two counts (counts 2 and 4) of falsifying a certificate in violation of Vehicle Code section 4463, subdivision (a)(1).

Vehicle Code section 4463, subdivision (a), provides in pertinent part:

"A person who, with intent to prejudice, damage, or defraud, commits any of the following acts is guilty of a felony . . . .  [¶] (1) Alters, forges, counterfeits, or falsifies a . . . certificate . . . ."

10

The jury was instructed that counts 2 and 4 (Veh. Code, § 4463, subd. (a)(1)) requires that a person "falsified a certificate" and "did so with the specific intent to prejudice, damage or defraud." (CALJIC No. 15.07 modified; see Veh. Code, § 4000.3 [smog certificate must be submitted to DMV].) By convicting Tovar of counts 2 and 4, the jurors concluded that Tovar had the intent to defraud when he falsified the certificates (i.e., the VIRs for the Toyota Camry and Dodge Ram). They would necessarily believe he knew the VIRs he was procuring or offering were false since they convicted him of falsifying the very same documents.

We conclude that there is no evidence in the record that could rationally lead a jury to believe that knowledge was not a required element in this case, nor do we believe that there is a reasonable likelihood that giving CALJIC No. 3.30 caused the jury to misapply the law in violation of the Constitution. We conclude that error, if any, in the court's instruction of CALJIC No. 3.30, was harmless beyond a reasonable doubt. (*Chapman*, *supra*, 386 U.S. at p. 26.)

Similarly, in reviewing the trial court's alleged constitutional error, if any, under the *Watson* standard, we conclude that there is no reasonable probability that the outcome of Tovar's trial would have been different had the court properly instructed the jury. (*Watson*, *supra*, 46 Cal.2d at p. 836.)

11

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

DEROIAN, J.*

We concur:

YEGAN, J, Acting P. J.

CODY, J.

---

* Judge of the Santa Barbara Superior Court assigned by the Chief Justice pursuant to article 6, section 6 of the California Constitution.

Craig Elliott Veals, Judge

Superior Court County of Los Angeles

_____

Debbie Yen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.